1
Rick Smith (WSBA No. 56565)
rsmith@mzclaw.com
2
MARKUN ZUSMAN & COMPTON LLP
465 California Street, Suite 401
3
San Francisco, California 94104
Tel: (415) 438-4388
4

5
*Attorney for Plaintiff Starz Entertainment, LLC*

6
7   **UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WASHINGTON**
8

9
STARZ ENTERTAINMENT, LLC,

No.  2:20-CV-04085 DMG (KSx)
10
W. Dist. of WA Case No.  22-mc-44-RSL
Plaintiff,
11

12   vs.

**DECLARATION OF STEVEN M.
GOLDBERG IN SUPPORT OF PLAINTIFF
STARZ ENTERTAINMENT, LLC'S MOTION
TO COMPEL COMPLIANCE WITH
SUBPOENA TO AMAZON.COM, INC.**
13   MGM DOMESTIC TELEVISION
DISTRIBUTION LLC,
14

15
Defendant.

*(Plaintiff's Motion to Compel Compliance with
Subpoena to Amazon.Com, Inc. and [Proposed]
Order filed concurrently herewith)*
16

17

18
I, Steven M. Goldberg, hereby declare as follows:

19
1.  I am an attorney at law duly licensed to practice law in California. I am a partner in the

20
firm Markun Zusman & Compton, LLP and counsel of record for Plaintiff Starz Entertainment,

21
LLC ("Starz") in the above captioned matter.  I have personal knowledge of the matters stated in

22
this Declaration and, if called and sworn as a witness, am competent to testify to them.

23
2.  Attached as Exhibit 1 hereto is a true and correct copy of the Complaint in this litigation,

24
*Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC,* Civil Action No. 2:20-

25
CV04085 DMG (KSx).

26
3.  On March 17, 2022, it was announced that Amazon.com Inc. ("Amazon") had completed

27
its acquisition of MGM Holdings Inc..  Attached as Exhibit 2 hereto is true and correct copy of an

28
announcement by the European Commission approving the transaction and noting the parties to

DECLARATION OF STEVEN M. GOLDBERG IN
SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA TO
AMAZON.COM, INC. (2:20-CV-04085-DMG (KSx))

MARKUN ZUSMAN & COMPTON LLP
465 California Street, Suite 401
San Francisco, California 94104
(415) 438-4388

the transaction are Amazon.com Inc. and MGM Holdings Inc.

4. On December 6, 2021, Starz served Amazon with a subpoena (the "December 6 Subpoena"). Attached as Exhibit 3 hereto is true and correct copy of the December 6 Subpoena.

5. In January 2022, after Amazon served its objections to the December 6 Subpoena, I engaged in various meet and confer efforts with counsel for Amazon regarding the December 6 Subpoena through written correspondence, calls and emails in an effort to resolve Amazon's objections to the December 6 Subpoena.

6. On April 12, 2022, Starz served Amazon with a subpoena (the "April 12 Subpoena"). Attached as Exhibit 4 hereto is true and correct copy of the April 12 Subpoena. The April 12 Subpoena is essentially identical to the December 6 Subpoena except with respect to the place of compliance. The April 12 Subpoena call for compliance in Seattle, Washington.

7. After service of the April 12 Subpoena, I engaged in further meet and confer efforts with counsel for Amazon in an effort to resolve Amazon's objections to the April 12 Subpoena. Specifically, I had a phone call with Deana Ahn and Jim Howard on April 14, 2022 regarding the subpoena and Amazon's objections thereto.

8. On April 22, 2022, Amazon served its Objections and Responses to the April 12 Subpoena. Attached as Exhibit 5 hereto is a true and correct copy of Amazon's Objection and Responses to the April 12 Subpoena.

9. In connection with Starz and Amazon's meet and confer efforts regarding the April 12 Subpoena, Amazon made a limited offer to produce some of the data called for in the subpoena, but that offer did not include all of the data sought by the April 12 Subpoena and was equivocal about the production of any documents that were created prior to 2019. Amazon's offer also did not include an offer to produce any documents responsive to the Requests Nos. 10-15 in the Subpoena which call for the production of certain communications related to Starz, the Pictures and the underlying litigation. Attached as Exhibit 6 hereto is a true and correct copy of correspondence from Amazon's counsel, Deanna Ahn, dated April 22, 2022.

10. Counsel for Defendant MGM Domestic Television Distribution, LLC ("MGM") has previously represented that its records are not organized in a manner that makes some of the

DECLARATION OF STEVEN M. GOLDBERG IN
SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA TO
AMAZON.COM, INC. (2:20-CV-04085-DMG (KSx))

2

MARKUN ZUSMAN & COMPTON LLP
465 California Street, Suite 401
San Francisco, California 94104
(415) 438-4388

responsive documents readily accessible.  To the extent MGM has produced agreements and communications with third parties, there have been instances where the agreements are missing amendments or schedules, are unsigned or are otherwise incomplete.

11. Attached as Exhibit 7 hereto is a true and correct copy of Defendant MGM's Supplemental Notice of Interested Parties and Corporate Disclosure Statement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   */s/ Steven M. Goldberg*_____
   Steven M. Goldberg

DECLARATION OF STEVEN M. GOLDBERG IN
SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA TO
AMAZON.COM, INC. (2:20-CV-04085-DMG (KSx))

3

MARKUN ZUSMAN & COMPTON LLP
465 California Street, Suite 401
San Francisco, California 94104
(415) 438-4388

# Exhibit 1

1 Steven M. Goldberg (State Bar No. 82174)
sgoldberg@mzclaw.com
2 MARKUN ZUSMAN FRENIERE COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
3 Telephone: (310) 454-5900
Facsimile: (310) 454-5970
4

5 Evan R. Chesler (N.Y. Bar No. 1475722)
(*Pro hac vice* application forthcoming)
6 echesler@cravath.com
J. Wesley Earnhardt (N.Y. Bar No. 4331609)
7 (*Pro hac vice* application forthcoming)
wearnhardt@cravath.com
8 CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
9 New York, NY 10019
Telephone: (212) 474-1000
10 Facsimile: (212) 474-3700

11

12 *Attorneys for Plaintiff*
STARZ ENTERTAINMENT, LLC

13

14 **UNITED STATES DISTRICT COURT**

15 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16 STARZ ENTERTAINMENT, LLC,  | Civil Action No. ___2:20-cv-4048___

17            Plaintiff,  | **COMPLAINT FOR:**

18     v.  | **1) DIRECT COPYRIGHT INFRINGEMENT;**

19 MGM DOMESTIC TELEVISION | **2) CONTRIBUTORY COPYRIGHT INFRINGEMENT;**
DISTRIBUTION LLC,
20  | **3) VICARIOUS COPYRIGHT INFRINGEMENT;**
            Defendant.
21  | **4) BREACH OF CONTRACT; AND**

22  | **5) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

23

24

25

26  | **DEMAND FOR JURY TRIAL**

27

28

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

1

## **COMPLAINT**

2      1.    Plaintiff, Starz Entertainment, LLC ("STARZ"), by and through

3   its undersigned attorneys, for its Complaint brought pursuant to 17 U.S.C. §§ 101 *et*

4   *seq.* and California law, against Defendant MGM Domestic Television Distribution

5   LLC ("MGM"), alleges as follows.  This Court has subject matter jurisdiction over

6   Counts 1-1020 pursuant to 28 U.S.C. §§ 1331 and 1338(a) and supplemental

7   jurisdiction over Counts 1021 and 1022 pursuant to 28 U.S.C. § 1367(a).  STARZ

8   bases its allegations on personal knowledge as to its own acts and on information

9   and belief as to all other matters.

10

## **NATURE OF THE ACTION**

11      2.    STARZ has an exclusive license to hundreds of Defendant

12   MGM's movies and television episodes ("Pictures") through two agreements, the

13   2013 and 2015 Library Agreements (as amended, the "Library Agreements").

14   MGM breached those agreements on a massive scale, ***admitting*** to licensing

15   ***hundreds*** of the STARZ-exclusive works to STARZ's competitors during the very

16   time periods in which STARZ was entitled to exclusivity.  Due to MGM's breach,

17   distributors of STARZ's content believed that STARZ's movies were widely

18   available from other services, when, in fact, they should have been available only

19   through STARZ.  That lack of exclusivity damaged STARZ vis-à-vis distributors,

20   who placed less value on STARZ's suite of offerings due to the belief that their

21   customers could find STARZ's movies elsewhere.  The lack of exclusivity also

22   damaged STARZ vis-à-vis consumers, who were motivated to turn to non-STARZ

23   services (including MGM services) to watch movies that belonged exclusively on

24   STARZ.  In short, not only has MGM admitted to breaching the exclusive rights it

25   granted to STARZ, it is plain that MGM directly profited from that breach in

26   numerous ways.

27      3.    For example, the manner in which MGM licensed the STARZ

28   exclusive works to one of STARZ's distributors caused consumers searching for a

STARZ ENTERTAINMENT, LLC'S
COMPLAINT                         - 2 -

Picture on that distributor's service to be directed to a version of that movie made available directly from MGM to subscribers of that platform at no additional cost. Pursuant to the Library Agreements, the consumer should have been directed only to STARZ—because only STARZ should have had the right to exhibit the movie. In that way, MGM's breach both robbed STARZ of an opportunity to gain subscribers and allowed MGM to further benefit by directing those subscribers (and the associated fees) to itself.

4.      STARZ brings this action against MGM for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, breach of contract and breach of the covenant of good faith and fair dealing.  STARZ seeks monetary damages—in the form of, *inter alia*, its own lost profits and all of MGM's profits attributable to the infringement—and injunctive relief, as specified below.

5.      STARZ is a leading provider of premium subscription video programming in the United States for distribution via facilities-based multichannel video programming distributors, including cable operators, satellite television providers and telecommunications companies (collectively, "MVPDs"), and via the Internet, including STARZ's direct-to-consumer distribution.  STARZ built its business by offering viewers content they could find nowhere else, including recently released "first-run" movies and other library movies.  It primarily acquires this content by entering into exclusive license agreements with movie studios such as MGM.

6.      For years, STARZ and MGM have had agreements in place—including the Library Agreements—through which STARZ acquired the exclusive right and license to exhibit hundreds of popular movies, including *Bill & Ted's Excellent Adventure*; *Bull Durham*; *Dances With Wolves*; *Rain Man*; *Hannibal*; *The Birdcage*; *Valkyrie*; *Be Cool*; *Moonstruck*; *Stargate*; *The Good, The Bad, and The Ugly*; *The Manchurian Candidate*; *Thelma & Louise*; *The Thomas Crown Affair*;

*Mad Max*; *The Terminator*; and James Bond films such as *Never Say Never Again*, *Die Another Day*, *The World is Not Enough* and *Tomorrow Never Dies*, among many others.

7.    Pursuant to the terms of the Library Agreements, MGM both granted STARZ the exclusive right to exhibit the copyrighted Pictures during the time periods specified therein, and also represented and warranted that it would not take or authorize any action that would materially impair any of the rights for which STARZ had bargained and paid.[1]

8.    MGM breached both promises.  Unbeknownst to STARZ, by at least 2015 (and potentially earlier), MGM began granting licenses to the STARZ-exclusive Pictures to other competing content services during the very time periods in which STARZ had the exclusive rights.  By its own admission, MGM licensed ***over 32%*** of the Pictures in the Library Agreements to competing services, in violation of STARZ's exclusive rights to those movies.  Although MGM has admitted to the breach generally, it is not yet confirmed how many platforms licensed Pictures from MGM.  STARZ's own investigation has revealed that over 150 titles have been breached, with some breaches occurring on MGM's own network, Epix, which competes with STARZ.

9.    MGM's breach of the Library Agreements and infringement of STARZ's exclusive copyrights caused STARZ tremendous damage in the form of lost profits, diminished reputation and loss of goodwill.  STARZ's offerings, which STARZ markets as exclusive, were de-valued both by customers and distributors because STARZ's exclusive copyrights were being infringed.

10.    In August 2019, STARZ first became suspicious that MGM might have violated the terms of the Library Agreements after a STARZ employee

---

[1] Exclusive licenses transfer copyright ownership for the purposes of the Copyright Act.  For that reason, STARZ uses the terms "licenses", "copyrights" and "rights" interchangeably throughout its Complaint.

STARZ ENTERTAINMENT, LLC'S
COMPLAINT
- 4 -

discovered that *Bill & Ted's Excellent Adventure*—a film that should have been exclusive to STARZ—was available for streaming on Amazon.  After notifying MGM of this discovery, MGM admitted this breach.  STARZ, however, discovered that *Bill & Ted's Excellent Adventure* was far from the only film that MGM appeared to have improperly licensed.

11.     On November 1, 2019, after repeated communications from STARZ identifying additional Pictures in breach, MGM—claiming that it had, itself, just become aware of its rampant breach—sent STARZ a list of 136 movies and 108 television series episodes that it identified as in breach of the Library Agreements.  STARZ's own investigation has uncovered nearly 100 additional Pictures that MGM apparently has licensed to others, including MGM's own network Epix, in breach of the Library Agreements.  The Pictures with respect to which STARZ believes its copyright and/or contractual rights have been violated are attached as Exhibit A.

12.     MGM's failure to honor its grant of exclusivity to STARZ is a direct, willful and reckless infringement of STARZ's copyrights; MGM also willfully and recklessly induced others to infringe STARZ's copyrights when MGM purported to license to those companies the same Pictures to which STARZ already had an exclusive license.

13.     STARZ brings this action to enforce its rights under the Copyright Act and to seek redress for MGM's breaches of the Library Agreements.  STARZ seeks damages under the Copyright Act 17 U.S.C. §§ 502, 504 and 505, including actual losses and infringer's profits; injunctive relief; compensatory and consequential damages; and attorney's fees.

**THE PARTIES**

14.     Plaintiff Starz Entertainment, LLC is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business in Santa Monica, California.

15. Defendant MGM Domestic Television Distribution LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Beverly Hills, California.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Counts 1-1020 pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has supplemental jurisdiction over Counts 1021 and 1022 pursuant to 28 U.S.C. § 1367(a) because those claims are related to the federal claims such that they form part of the same case or controversy.

18. This Court has personal jurisdiction over MGM because MGM is headquartered and does business in this district. In addition, the Library Agreements, which were made and entered into in the State of California, provide that the "state and federal courts located in Los Angeles, California, shall have sole jurisdiction over any suit or other proceedings arising out of or based upon" those Agreements.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a). MGM resides in this judicial district, has committed acts of infringement in this judicial district, has a regular and established place of business in California and in this district, and has purposely transacted business involving the at issue licenses in this district.

## STATEMENT OF FACTS

### STARZ's Business and the Importance of Exclusivity

20. STARZ is a leading provider of premium subscription video programming with over 26.2 million subscribers as of February 2020. It operates a suite of 17 STARZ, STARZEncore and MoviePlex premium cable television channels and corresponding on-demand services (collectively, the "STARZ Services"), and its extensive library includes popular original television series and exclusive movies and television series from major and independent studios.

21.     The STARZ Services are available to consumers through MVPDs (such as Comcast, Charter, AT&T/DIRECTV, DISH Network and Verizon) and Internet-based distributors (such as Amazon's Prime Video service, Hulu and STARZ's own direct-to-consumer Internet service).  STARZ Services are offered on a recurring monthly basis as part of a program package or on an a la carte basis.

22.     To ensure that STARZ continues to offer competitive and compelling content, STARZ has entered into licensing agreements with several movie studios, including MGM.  Pursuant to the terms of those agreements, STARZ receives the exclusive rights to exhibit specific content throughout the STARZ network.  Those exclusive rights ensure that, for a given Picture, STARZ will be the only service with that Picture for a specified period of time.

23.     Content exclusivity always has been important to STARZ.  It built its business on offering consumers movies that are available only through it. Those exclusive offerings include a large, rotating selection of newer movies that are no longer in theaters but also are not available for viewing on any other subscription, advertising-supported or free video service ("first-run" movies) and classic movies.

24.     Exclusive content attracts customers and is vital to STARZ's relationships with distributors.  STARZ has built a library of exclusive movies so that at any given time since at least 2015 STARZ has had more exclusive movies on its service than competing services.  By being able to consistently offer more movies on an exclusive basis than other networks, STARZ has built its reputation among consumers and among MVPDs as a valuable premium channel. Historically, STARZ has sought *only* exclusive licenses.  Thus, for example, while there have been a few exceptions, more than 98% of the broadcast movies on the STARZ flagship channel in 2019 are licensed on an exclusive basis.

STARZ ENTERTAINMENT, LLC'S
COMPLAINT                               - 7 -

25. Exclusive licenses are extremely valuable to STARZ, not only because they allow the licensed Pictures to be shown on the STARZ Services, but also because they convey an ownership interest which enables STARZ to *exclude others* from showing the Pictures.

26. This exclusivity is critical to STARZ's ability to compete. Distributors have put pressure on STARZ to ensure that it offers a wide range of ***exclusive*** movies.

## STARZ's Exclusive Licensing Agreements with MGM

27. On July 26, 2013, STARZ entered into an exclusive licensing agreement with MGM—the Library Deal Memorandum agreement (the "2013 Library Agreement"). Pursuant to the terms of this agreement, MGM granted STARZ the exclusive right and license to exhibit within the United States 313 MGM movies and 108 television series episodes by means of pay television and subscription video on demand for various license periods for each Picture.

28. MGM represented and warranted that "each Picture is and will be protected by copyright in the U.S. throughout the duration of such Picture's License Period."

29. The 2013 Library Agreement explicitly provides STARZ with exclusive copyrights to show the listed Pictures on pay television and on-demand. Paragraph 3 provides that:

> [STARZ] will have the right and license to exhibit each
> Picture by means of Pay Television and SOD in the
> Territory during such Picture's License Period, on the
> [STARZ] services (as defined below) in the English
> language and, if and to the extent such rights are owned or
> controlled by MGM on a picture-by-picture basis as
> indicated on Exhibit "A-1" hereto, Spanish . . . . **Such**
> **Pay Television and SOD rights shall be exclusive** in the

Territory with respect to the Pictures, other than

[exceptions not relevant here].

30. MGM further committed that it would not exhibit or authorize others to exhibit the content on virtually any platform, including free television. In Paragraph 10, MGM promised that:

MGM shall not exhibit or authorize the exhibition of, or

promote or authorize the promotion of the exhibition of,

any Picture in the Territory during its applicable License

Period(s) in the Licensed Languages or any non-Licensed

Language by means of any form of free television

(including free-on-demand television), basic television,

SOD or Pay Television (including without limitation

distribution of each of the foregoing media by means of

electronic delivery via the Internet, for example,

distribution of free television by means of the Internet).

31. In its representations and warranties, MGM represented in Paragraph 19 that it had not and would not grant rights in the Pictures to any other party:

MGM represents, warrants and covenants (a) it has all

rights necessary to enter into this Library Deal

Memorandum and to perform all of its obligations

hereunder; (b) MGM has not taken or authorized, and will

not take or authorize, any action by which any of the

rights in any Picture granted herein by MGM to [STARZ]

have been or may be materially impaired in any way.

32. In addition to granting STARZ exclusive rights, MGM delivered masters of each Picture to a "mutually agreed lab", which is the means by which MGM provides the physical copy of pictures to entities who then exhibit them.

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

- 9 -

33.     On May 7, 2015, STARZ and MGM entered into another exclusive licensing agreement—the 2015 Library Agreement (the "2015 Library Agreement").

34.     That agreement provided STARZ with the exclusive right to exhibit within the United States 472 MGM movies and 68 television series episodes.  Like the 2013 Library Agreement, the 2015 Library Agreement provided STARZ with exclusive copyrights in Paragraph 3:

> MGM hereby grants to [STARZ] the exclusive right and license (except as otherwise expressly set forth below) to exhibit each Picture by means of Pay Television and [Subscription Video On Demand] in the Territory during such Picture's License Period, on the [STARZ] Services (each, as defined below) in the English language and, if and to the extent such rights are owned or controlled by MGM on a picture-by-picture basis as indicated on Exhibit "A" hereto, Spanish . . . . Such Pay Television and SVOD rights shall be exclusive in the Territory with respect to the Pictures, other than [exceptions not relevant here].

35.     In Paragraph 10, MGM again promised:

> **MGM shall not exhibit or authorize the exhibition of, or promote or authorize the promotion of the exhibition of, any Picture in the Territory during its applicable License Period(s) in the Licensed Languages or any non-Licensed Language** by means of any form of free television (including free-on-demand television), basic television, SVOD or Pay Television (including without limitation distribution of each of the

foregoing media by means of electronic delivery via the
Internet, for example, distribution of free television by
means of the Internet).

36.     And, again, in Paragraph 19, MGM further promised that:
(a) it has all rights necessary to enter into this Library
Agreement and to perform all of its obligations hereunder;
(b) MGM has not taken or authorized, and will not take or
authorize, any action by which any of the rights in any
Picture granted herein by MGM to [STARZ] have been or
may be materially impaired in any way.

37.     The two Library Agreements provided STARZ with the
exclusive right under copyright to exhibit 585 movies and 176 television series
episodes for the time periods provided under their respective agreements.  In
exchange for those exclusive rights and licenses, STARZ agreed to pay MGM
nearly 70 million dollars over the life of the two Library Agreements.

38.     The value in entering into the Library Agreements was not only
that they allowed STARZ to exhibit content, but also that the content would be
provided to STARZ exclusively, such that STARZ could prohibit others (including
MGM) from using or impairing STARZ's copyrights.  STARZ would not have
entered into the Library Agreements without MGM providing exclusivity and
without MGM committing to safeguard those rights.  As a premium pay network,
STARZ is not in the business of acquiring or exhibiting non-exclusive content.

39.     MGM breached its representations, including its explicit
representation and warranty that MGM "ha[d] not taken or authorized, and will not
take or authorize, any action" impairing STARZ's rights to these Pictures.
Contrary to MGM's representations and promises, MGM repeatedly and
systematically breached its contractual obligations and infringed STARZ's
exclusive copyrights by purporting to license the Pictures to STARZ's competitors.

**Exclusivity is Important For STARZ And Its Distributors For Its Ability to Attract and Retain Customers**

40.     STARZ's ability to provide exclusive content is not only an important consideration in how STARZ values its agreements with its studio partners, but exclusivity also is vital to STARZ's ability to compete with other content providers.

41.     Traditionally, STARZ has negotiated distribution agreements with cable companies and others to provide STARZ to consumers. Those agreements set forth the rates and carriage terms governing the distribution of the STARZ Services on their platforms.

42.     STARZ markets its library of predominantly exclusive films with strong, well-known titles. Distributors of STARZ value its ability to provide exclusive content and have put pressure on STARZ to ensure the exclusivity of its content. The overwhelming majority of STARZ's movies—in 2019 over 98% of the movies broadcast on the STARZ flagship channel and 91% of the movies broadcast across all STARZ-owned channels—are exclusive. While STARZ continues to offer an extensive library of exclusive titles, and STARZ has been expanding its original content offerings, including hit series such as *Power*, *Outlander*, *American Gods* and *Vida*, the perceived lack of exclusivity caused by MGM's infringement of the Pictures—including on MGM's own competitor Epix channels—has caused at least one major distributor to question STARZ's value and significantly damaged STARZ's relationship with that distributor—to MGM and Epix's benefit.

43.     Exclusive content also is a way for STARZ to attract and retain consumers. For example, when an individual searches for movies or television shows online and finds that the title they are looking for is available only on STARZ, it encourages them to subscribe to STARZ. If, on the other hand, the online search reveals multiple options to view the title searched for, the consumer

STARZ ENTERTAINMENT, LLC'S
COMPLAINT
- 12 -

would have no additional incentive to subscribe to STARZ specifically; instead, the consumer may choose to subscribe to one of STARZ's competitors or to watch the title on a platform to which they already have a subscription. Thus, a lack of exclusivity deprives STARZ of the opportunity to attract new subscribers.

### **MGM is Forced To Admit the Massive Breaches Discovered By STARZ**

44. In August 2019, STARZ became suspicious for the first time that MGM might have violated the terms of the Library Agreements. During that month, a STARZ employee noticed that *Bill & Ted's Excellent Adventure*, a movie that STARZ had the exclusive right to exhibit, was being exhibited on Amazon Prime Video services. STARZ asked MGM about this apparent breach and MGM responded that it would "dig into this" and get back to STARZ.

45. On August 13, 2019, MGM admitted that *Bill & Ted's Excellent Adventure* had been licensed improperly during the STARZ exclusive license period, and offered to provide additional periods of exclusivity. MGM did not inform STARZ that the exclusivity of any other titles had been violated.

46. On August 23, 2019, STARZ followed up to inform MGM that *Bill & Ted's Excellent Adventure* was not the only breach; STARZ had since discovered that ***22 of the approximately 70 MGM movies then available on STARZ were streaming on Amazon Prime Video services***. Again, MGM told STARZ that it would "dig into this".

47. On September 11, 2019, MGM claimed that it had found the source of the problem that STARZ had brought to its attention, that the issue had been "corrected", and that the 22 titles were no longer being infringed. Again, MGM failed to disclose that other STARZ-exclusive Pictures also had been improperly licensed.

48. On September 30, 2019, MGM provided STARZ with a list of 22 movies that it had identified as streaming on Amazon Prime Video services

1  when those movies should have only been available on STARZ.  But STARZ found

2  discrepancies in the information MGM provided—certain movies STARZ had

3  found were not included on MGM's list of 22 movies, and certain movies on

4  MGM's list of 22 were new to STARZ.  STARZ again asked MGM to investigate

5  the situation, and identified three additional movies that were being streamed by

6  Amazon Prime Video services in violation of STARZ's rights to exclusivity.

7  MGM again said it would "dig[] into" it.

8         49.    Becoming suspicious that MGM was not being forthcoming

9  about the scope and nature of its breach, on October 18, 2019, STARZ sent a letter

10  to MGM seeking formal assurances that (i) the 22 movies MGM had identified as

11  being exhibited by Amazon Prime, plus the three additional movies STARZ asked

12  MGM to investigate, were not licensed to any other service provider; (ii) that other

13  than those 25 movies, none of the other Pictures MGM licensed exclusively to

14  STARZ under the Library Agreements had been licensed to Amazon Prime or any

15  other service provider; and (iii) that MGM was taking affirmative measures to

16  ensure that no Pictures licensed to STARZ under the Library Agreements would be

17  licensed to any other service provider in violation of the terms of those agreements.

18         50.    On November 1, 2019, MGM finally admitted that the 25

19  movies STARZ had inquired about were, in fact, only the tip of the iceberg.  MGM

20  attached to its reply email *a list of 136 movies and 108 television series episodes*

21  that MGM identified as having been licensed to third parties during the STARZ

22  exclusive license periods.  That list also included the number of days of

23  "exclusivity overlap" for each Picture, meaning that MGM told STARZ the number

24  of days on which the Pictures were licensed to third parties when STARZ had the

25  exclusive copyright to those Pictures.  The exclusivity overlaps ranged from one

26  day for *Gang Related* to all 456 days of the license period for *The Thomas Crown*

27  *Affair* under the 2013 Library Agreement.  In that same email, MGM assured

28

STARZ that it had "taken action to ensure that [its] rights tracking system accurately reflects the terms of our deals and full exclusivity for all other licensed Pictures will be maintained". But that was not true. As of December 12, 2019, several of the breached and/or infringed Pictures were *still* available on various services when they should have been exclusive to STARZ.

51.     STARZ has since learned that MGM's breach of exclusivity has been happening since at least 2015 without STARZ's knowledge. Certain Pictures were licensed in violation of STARZ's rights under copyright for hundreds of days. For example, MGM licensed the James Bond movie *Never Say Never Again* to Amazon Prime Video services for *over 300 of the 429 days* that STARZ held the exclusive license to distribute that movie on pay television and SVOD. MGM *admitted* that it did this with hundreds of Pictures, in breach of the Library Agreements and in violation of STARZ's copyrights.

52.     STARZ continues to discover new evidence that MGM has licensed *even more* of STARZ's exclusive Pictures to third parties than MGM admitted in its November 1, 2019 email. Through STARZ's continuing internal review, it has so far identified *nearly 100 additional movies* (not included on MGM's list) that appear to have been licensed to third parties during time periods in which STARZ enjoyed exclusivity.

53.     Worse, STARZ discovered that some of the Pictures exclusively licensed to STARZ were exhibited on Epix—the competitor pay television and SVOD service *wholly owned by MGM*—during the periods in which STARZ had an exclusive right to exhibit those Pictures. STARZ requires discovery to uncover the full extent of MGM's breach and infringement.

**MGM's Infringement Damaged STARZ vis-a-vis its Distributors and Customers**

54.     By purporting to license the Pictures to which STARZ had been conveyed exclusive copyrights, MGM directly, willfully and recklessly infringed STARZ's copyright for each work, contributed to (and caused) others' infringement and breached the promises it made in the Library Agreements, including its representations and warranties.

55.     Though the infringement and breach is ongoing, much damage already has been done.  Despite the increasing popularity of STARZ's new original content, the perceived lack of exclusivity caused by MGM's infringement of the Pictures has devalued STARZ in the eyes of some and significantly damaged STARZ's relationship with at least one major distributor.

56.     MGM's infringement and breach also hampered STARZ's ability to attract and retain subscribers to STARZ's own services.  STARZ's exclusive content works as a marketing tool to attract new subscribers.  But when a viewer searched online for a Picture to watch and learned that the Picture was available either on STARZ or a third-party service (when it should have been available only on STARZ) that viewer was encouraged not to subscribe to STARZ, but instead to use the competing service.  A search for what should have been an exclusive Picture to STARZ, which should have been a boost to STARZ's business, instead caused STARZ potentially to lose customers.

57.     For example, MGM made many of the infringed Pictures available for viewing on Amazon Prime Video services through its Prime Video Direct service.  The Prime Video Direct service allows content owners, such as MGM, to directly publish pictures on the Amazon Prime Video platform, earning fees based on how many consumers watch the pictures.  MGM licensed many of the STARZ-exclusive movies to Amazon via its Prime Video Direct Service.

58.     That had severe negative consequences for STARZ.  When a consumer is searching for a STARZ-exclusive title on Amazon, the platform should inform the consumer that the title is available for no additional charge to subscribers of STARZ.  For a consumer that is not a STARZ subscriber, the platform also promotes the STARZ service, offering a seven-day free trial.  This is a powerful way for STARZ to attract new subscribers based on the exclusive nature of its offerings.  But when a title is not exclusive to STARZ, but instead is also available on the Amazon Prime Video services (even when it should have been available only through STARZ), the platform first suggests that the consumer watch it through the Amazon Prime Video services, at no additional charge for Amazon Prime subscribers.  The platform does not highlight the STARZ service and, instead, the company that provided the movie through the Prime Video Direct service (such as MGM) gets a fee from Amazon if the customer watches the movie through Amazon Prime Video.  Thus, when MGM licensed STARZ-exclusive content to Amazon through the Prime Video Direct service, it both robbed STARZ of the opportunity to attract new subscribers, and directly profited from its own infringement.

59.     Not only is exclusivity important in attracting new subscribers, it also is a key component in maintaining consumer loyalty.  For example, one consumer recently stated in a review of STARZ on Apple's App Store that "Starz shows movies you don't always see on the other services and *for that reason alone it's worth the price of a subscription*."  If consumers see that the Pictures they are looking for, time after time, are available not only on STARZ but also on Amazon Prime Video services or another third-party service, they are less likely to keep a STARZ subscription.

60.     STARZ has been irreparably harmed by MGM's actions.  This includes harm to its reputation and loss of goodwill among consumers and distributors as a source for exclusive, high-quality programming.

## COUNTS 1-340: COPYRIGHT INFRINGEMENT IN VIOLATION OF

## 17 U.S.C. § 501

### (Against Defendant MGM)

61. STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

62. STARZ is the exclusive licensee of registered copyrights in certain Pictures under the Library Agreements. With each license, STARZ holds the exclusive rights and licenses to exhibit the at-issue Pictures within the United States for pay television and SVOD during the exclusivity periods.

63. MGM infringed those rights and violated the Copyright Act, 17 U.S.C. § 501, when MGM purported to grant licenses for the same copyrights for the same Pictures to third parties during the exclusivity periods.

64. At no time has STARZ authorized MGM to license or distribute those works to other competing services during the exclusivity periods.

65. MGM knew that STARZ owned the exclusive rights and license to the infringed works. Despite that knowledge, MGM willfully entered into agreements that purported to license the copyrighted works to other parties.

66. MGM's infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

67. Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement by MGM. MGM infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## <u>COUNTS 341-680: CONTRIBUTORY COPYRIGHT INFRINGEMENT IN</u>
## <u>VIOLATION OF 17 U.S.C. § 501</u>

### (Against Defendant MGM)

68.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

69.     MGM is liable as a contributory infringer for the copyright infringement committed by Amazon and other third parties. MGM knew that the infringement has occurred and is continuing to occur, and MGM caused, enabled, facilitated and materially contributed to that infringement.

70.     Amazon and other third parties have directly infringed and are directly infringing STARZ's copyrights by distributing copyrighted Pictures to the public via pay television and SVOD in violation of STARZ's exclusive rights under the Library Agreements and in violation of the Copyright Act, 17 U.S.C.§ 501.

71.     MGM caused, enabled, facilitated and materially contributed to that infringement by purporting to issue licenses to the at issue Pictures to those third parties and by giving those third parties access to the masters of the Pictures.

72.     MGM's knowledge of the infringement is both actual and constructive. It has admitted that it entered into licensing agreements with third parties which purported to grant those third parties licenses to distribute Pictures when MGM knew that STARZ owned the exclusive copyrights to those Pictures, having granted STARZ those exclusive rights in the first instance.

73.     MGM's contributory infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

74.     Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement. MGM contributorily infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## COUNTS 681-1020: VICARIOUS COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501

### (Against Defendant MGM)

75.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

76.     MGM is liable as a vicarious infringer for the copyright infringement committed via Amazon Prime Video services and other third-party services.  MGM (i) profited from the direct infringement while (ii) declining to exercise its rights to stop or limit it.

77.     Amazon and other third parties have directly infringed and are directly infringing STARZ's copyrights by distributing copyrighted Pictures to the public via pay television and SVOD in violation of STARZ's exclusive rights under the Library Agreements and in violation of the Copyright Act, 17 U.S.C.§ 501.

78.     MGM had the ability to prevent the infringing conduct by refusing to license to third parties works that already had been exclusively licensed to STARZ.  MGM did not do so, but, instead actively sought to license STARZ's exclusive Pictures to others.

79.     MGM profited from the direct infringement by, *inter alia*, (i) receiving license fees from Amazon and others for the STARZ-exclusive Pictures; and (ii) gaining an enhanced reputation as having rights to Pictures it does not have.

80.     MGM's vicarious infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

81.     Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement.  MGM vicariously infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## COUNT 1021:  BREACH OF CONTRACT

### (Against Defendant MGM)

82.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

83.     The Library Agreements between STARZ and MGM are valid and enforceable agreements between the parties.

84.     STARZ has performed its obligations under the Library Agreements in all material respects.

85.     MGM breached the Library Agreements, which grant STARZ the exclusive right and license to exhibit certain Pictures on pay television and SVOD and provide that MGM shall not exhibit or authorize the exhibition of those same Pictures by means of free television, basic television, SVOD and pay television, by purporting to license Pictures to others that MGM already had licensed exclusively to STARZ.

A.     MGM breached paragraph 10 of the 2013 Library Agreement and paragraph 10 of the 2015 Library Agreement, which state that "MGM shall not exhibit or authorize the exhibition of, or promote or authorize the promotion of the exhibition of" any of the Pictures covered under that agreement "by means of any form of free television", "basic television", Subscription Video on Demand, or "Pay Television" when it purported to grant licenses for STARZ's exclusive content to third parties.

B.     MGM breached its representations and warranties in paragraph 19 of the 2013 Library Agreement and paragraph 19 of the 2015 Library Agreement by failing to ensure that it "has not taken or authorized, and will not take or authorize, any action by which any of the rights in which any Picture granted [by MGM to STARZ] have been or may be materially impaired in any way."

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

86.     STARZ has been injured, and continues to be injured, by MGM's material breaches of the Library Agreements.  STARZ is entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT 1022:  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant MGM)

87.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

88.     MGM and STARZ entered into the Library Agreements whereby MGM granted STARZ the exclusive right and license to certain Pictures.

89.     STARZ has performed its obligations under the Library Agreements in all material respects.

90.     MGM had a duty to act fairly and in good faith and to do nothing which would have the effect of destroying, interfering, frustrating or injuring the rights of STARZ to receive the benefits of the Library Agreements.

91.     MGM has breached the implied covenant of good faith and fair dealing by engaging in a course of conduct to deprive STARZ of its rights under the Library Agreements.  MGM has, among other things, destroyed, interfered with, frustrated and injured STARZ's rights by failing to ensure that MGM was not licensing STARZ-exclusive Pictures to third parties during the STARZ exclusivity periods.

92.     As a direct and proximate result of MGM's breach of the implied covenant of good faith and fair dealing under the Library Agreements, STARZ has been injured and damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant and respectfully requests the following relief:

A.      Judgment that MGM directly, contributorily and vicariously infringed STARZ's copyrights in violation of the Copyright Act;

B.      Judgment that MGM breached the Library Agreements and the implied covenant of good faith and fair dealing contained therein;

C.      An award to STARZ of MGM's profits attributable to its direct, contributory and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, licensing fees it collected from third parties for the STARZ-exclusive Pictures it purported to license in violation of STARZ's copyrights and all other profits it stands to gain from its infringement;

D.      An award to STARZ of monetary damages equal to STARZ's actual damages caused by MGM's direct, contributory and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, lost profits from receiving less in distribution fees from content distributors, lost profits due to the loss of subscribers to STARZ's services, loss of good will and reputational harm;

E.      In the alternative, STARZ reserves the right to elect maximum statutory damages (in lieu of actual damages) pursuant to 17 U.S.C. § 504(c) at anytime prior to final judgment;

F.      An order (i) enjoining MGM from infringing STARZ's copyrights, whether directly, indirectly or vicariously; and (ii) directing MGM to cease causing, enabling, facilitating, encouraging, promoting, inducing, contributing to, and participating in the infringement of STARZ's copyrights;

G.      Compensatory and consequential damages, including, but not limited to, lost profits, goodwill and reputational harm, resulting from MGM's

breach of the terms and representations and warranties in the Library Agreements, in an amount to be proven at trial;

H.  Compensatory and consequential damages, including, but not limited to, lost profits, goodwill and reputational harm, resulting from the breach of the covenant of good faith and fair dealing in the Library Agreements in an amount to be proven at trial;

I.  STARZ's costs and disbursements in this action, including reasonable attorneys' fees and prejudgment and post-judgment interest; and

J.  Such other and further relief as the Court deems proper and just.

### Jury Demand

Pursuant to Fed. R. Civ. P. 38(b) and L.R. 38-1, STARZ demands a jury trial on all issues so triable.

Dated:  May 4, 2020

Respectfully submitted,

Steven M. Goldberg
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE
COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

Evan R. Chesler
echesler@cravath.com
J. Wesley Earnhardt
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019

1   Telephone: (212) 474-1000
    Facsimile: (212) 474-3700

2

3   *Attorneys for Plaintiff STARZ*
    *Entertainment, LLC*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STARZ ENTERTAINMENT, LLC'S
COMPLAINT                          - 25 -

# Exhibit 2

**European Commission - Press release**





## Mergers: Commission approves acquisition of MGM by Amazon

Brussels, 15 March 2022

The European Commission has approved unconditionally, under the EU Merger Regulation, the proposed acquisition of MGM Holdings Inc. ('MGM') by Amazon.com Inc ('Amazon'). The Commission concluded that the transaction would raise no competition concerns in the European Economic Area ('EEA').

**Amazon** operates a range of businesses including retail, consumer electronics and technology services, as well as the (co-)production and retail supply of own and third-party audio-visual ('AV') content through Prime Video. **MGM** is an entertainment company, which produces and distributes AV content.

### The Commission's investigation

Based on its market investigation, the Commission found that the transaction, as notified, would not significantly reduce competition in the markets for (i) the production and supply of AV content, (ii) the wholesale supply of TV channels, (iii) the retail supply of AV services, (iv) the production and licensing of distribution rights to third-party distributors of films for theatrical release and (v) the provision of marketplace services. These markets are found to be likely national in scope.

During its investigation, the Commission examined:

- **The horizontal overlaps between the activities of Amazon and MGM in the AV content value chain.** The Commission found that the overlaps between Amazon and MGM are limited. The parties are primarily active in different parts of the AV content value chain and where both parties are active, their combined market shares are low.

- **The vertical links between the activities of Amazon and MGM in the AV content value chain.** The Commission found that (i) MGM's upstream activities as a producer and licensor of AV content are limited compared to other market players' activities, (ii) MGM's content cannot be considered as must-have and (iii) a wide variety of alternative content exists. Even in the national markets where Amazon has a sizeable market presence among video streaming platforms, the Commission found that Amazon faces strong competition from other players.

- **The vertical link between the activities of Amazon and MGM in the upstream market for the production and licensing of films for theatrical release and the downstream market for the theatrical exhibition of films.** The Commission found that MGM's films represent only a limited share of box office revenues in the EEA and that overall MGM is not among the top production studios, despite its rights over successful film franchises such as *James Bond*.

- **The conglomerate links regarding MGM's content and Amazon's existing bundle of AV retail and marketplace service products.** The Commission concluded that the addition of MGM's content into Amazon's Prime Video offer would not have a significant impact on Amazon's position as provider of marketplace services.

The Commission therefore concluded that the proposed transaction would raise no competition concerns on any of the markets examined in the EEA and cleared the case unconditionally.

### Companies and products

**Amazon** is a US based multinational company which operates a range of businesses including retail, entertainment, consumer electronics and technology services. Amazon is active in the (co-)production of AV content through Amazon Studios, which is available alongside third-party content on Amazon's home entertainment offering, Prime Video, available to consumers in the EEA and globally.

**MGM** is a US based company which is active in the production and distribution of AV content in the EEA and globally. MGM also offers a wholesale channel, MGM+, in a number of EEA jurisdictions via retail distributors Prime Video, Zattoo, and Mediaset.

**Merger control and procedure**

The transaction was notified to the Commission on 8 February 2022 pursuant to Article 4 of Council Regulation (EC) No 139/2004.

The Commission has the duty to assess mergers and acquisitions involving companies with a turnover above certain thresholds (see Article 1 of the Merger Regulation) and to prevent concentrations that would significantly impede effective competition in the EEA or any substantial part of it.

The vast majority of notified mergers do not pose competition problems and are cleared after a routine review. From the moment a transaction is notified, the Commission generally has 25 working days to decide whether to grant approval (Phase I) or to start an in-depth investigation (Phase II).

More information will be available on the Commission's competition website, in the Commission's public case register under the case number M.10349.

IP/22/1762

---

Press contacts:

     Arianna PODESTA (+32 2 298 70 24)
     Maria TSONI (+32 2 299 05 26)

General public inquiries: Europe Direct by phone 00 800 67 89 10 11 or by email

Exhibit 3

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California ▢▾

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  2:20-CV-04085 DMG (KSx) |
| MGM DOMESTIC TELEVISION | ) |
| DISTRIBUTION LLC, | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:              Amazon.com, Inc. c/o Corporation Service Company
              2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833.

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Markun Zusman Freniere Compton LLP<br>3 Hutton Centre Dr., 9th Floor<br>Santa Ana, CA 92707 | Date and Time:<br>January 5, 2022    10:00am |
|---|---|

▢ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Steven Goldberg |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
Starz Entertainment, LLC _____ , who issues or requests this subpoena, are:

Steven Goldberg, 3 Hutton Centre Dr., 9th Floor, Santa Ana, CA 92707, sgoldberg@mzclaw.com, 310-990-4109

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:20-CV-04085 DMG (KSx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

The following definitions shall apply to the Requests for Production (the "Requests") contained herein:

1.  The term "Affiliate" means and refers to any Person (including any entity) that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, a Person (including an entity).

2.  The term "Communication" means and refers to every manner or means of disclosure, transfer or exchange of information, whether orally, in writing, face to face, by telephone, mail, e-mail, short message service, multimedia message, text message, personal delivery or otherwise.

3.  The term "concerning" and any derivative thereof means and refers to constituting, evidencing, reflecting, incorporating, effecting, including or otherwise pertaining or relating to, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the Request.

4.  The terms "Document" or "Documents" shall have the broadest meaning permissible consistent with Rule 34 of the Federal Rules of Civil Procedure.  A draft, annotated or otherwise non-identical copy, including a copy with handwritten notes, is a separate Document within the meaning of this term.  Communications are Documents within the meaning of this term.

5.  The terms "Amazon", "You" and "Your" means and refers to Amazon.com, Inc., and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates (including, but not limited to, Amazon.com Services LLC), subsidiaries, predecessors or assigns.

6.  The term "Amazon Services" means and refers to every manner and means of watching, streaming, searching for, renting, purchasing or otherwise consuming motion

pictures and television series directly through Amazon's platforms, including but not limited to Amazon Prime Video, except that the term "Amazon Services" does not refer to watching, streaming, searching for, renting, purchasing or otherwise consuming motion pictures and television series through the Starz channel on Amazon Prime Video.  The term "Amazon Services" also does not include the sale of physical DVDs, laser discs, VHS tapes or any other physical medium containing one or more of the Pictures.

7.     The terms "MGM" or "Defendant" mean and refer to MGM Domestic Television Distribution LLC and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates, subsidiaries, predecessors or assigns.

8.     The terms "EPIX" means and refers to EPIX Entertainment LLC, and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates, subsidiaries, predecessors or assigns.

9.     The terms "Person" or "Persons" mean and refer to any individual, corporation, limited liability company, partnership, firm, association, government agency or other organization recognizable at law, and its directors, officers, agents and employees.

10.     The term "Pictures" means and refers to any of the motion picture and television series listed in Schedule B attached hereto.

11.     The terms "Starz" or "Plaintiff" mean and refer to Starz Entertainment, LLC, as well as its consultants, advisors, representatives, agents, attorneys, accountants, employees and all Persons acting or purporting to act on behalf of any of the foregoing.

## <u>INSTRUCTIONS</u>

1. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope.

2. The use of the singular form of any word includes the plural and vice versa; the use of the masculine includes the feminine, and the use of the feminine includes the masculine.

3. "Any" shall be construed to include "all" and vice versa, and "all" shall be construed to include "each" and vice versa, as is necessary to make the Request inclusive rather than exclusive.

4. The words "and," "and/or" and "or" shall be construed conjunctively or disjunctively, as is necessary to make the Request inclusive rather than exclusive.

5. The words "include," "includes" and "including" shall be construed to mean "include, but not be limited to," "includes, but is not limited to" and "including, but not limited to," respectively.

6. If, in responding to these Requests, You claim any ambiguity in the Request, such claim shall not be utilized as a basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation used in responding to the Request.

7. The Requests shall be deemed to be continuing in nature and your responses to them are to be promptly supplemented or amended if, after the time of your initial responses, you learn that any response is or has become in some material respect incomplete or incorrect.

8. Unless otherwise indicated, the relevant time period for the Requests is from January 1, 2013, to the date of the responses.

9. The Requests call for the production of all responsive Documents that are in Your possession, custody or control, wherever located, regardless of whether they are

possessed directly by You or Your agents, representatives, employees, accountants, attorneys or other Persons acting or purporting to act on Your behalf.

10. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

11. Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation or exclusion.

12. Where a Request seeks Documents from a particular period, undated Documents shall be presumed to be from or concerning that period.

13. All Documents and Communications should be produced for copying or inspection as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific Request(s) to which they are responsive. You shall produce the Documents and Communications requested herein, including electronic Documents and Communications, in the original file folders, boxes or other containers or binders in which such items are found, including the title, labels or other description of each such folder, box or other container, or attach a copy of the Documents or Communications to copies of the file folders from which they came. The integrity and internal sequence of the requested Documents and Communications within each folder shall not be disturbed or commingled with the contents of another folder. All Documents and Communications should be stored, clipped, stapled or otherwise arranged in the same form and manner as they were found. If a Document or Communication is responsive to more than one Request, You are not required to duplicate production.

14. Plaintiff reserves the right to view the original of any copy of a Document or Communication provided in response to the Requests. By accepting a copy of a Document or Communication provided in response to any Request, Plaintiff does not waive the right to view or inspect any original Document or Communication.

15. If any objection is made to any of the Requests, the response shall state whether Documents or Communications are being withheld from inspection and production on

the basis of such objection, or whether inspection or production of the responsive items will occur notwithstanding such objection.

16.     If You object to a Request and withhold any information or Document requested herein pursuant to a claim of privilege, work product or other discovery protection, state with respect to each such Document:  (a) the privilege upon which You are relying; (b) the type of Document (*e.g.*, letter, memorandum); (c) the date of the Document; (d) the name and title of the author; (e) the name and title of the addressee; (f) the names and titles of all recipients; and (g) a general description of the subject matter of the Document, including all information necessary to determine the basis for assertion of the privilege or protection.

17.     If You claim privilege with regard to only part of a Document or Communication, produce the non-privileged part and furnish a list identifying each item that is partially withheld based on a claim of privilege together with the information listed in the preceding paragraph.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All agreements pursuant to which You were granted a license or other authorization to exhibit or otherwise exploit any of the Pictures on any Amazon Services.

2.    Documents sufficient to show the date(s) on which each Picture was exhibited, available for watching or streaming, or otherwise exploited on any Amazon Services.

3.    Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (*e.g.*, user zip code or other geographic designation):  (a) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures; (b) the number of Amazon users who viewed each Picture, in whole or in part, through the Amazon Services; (c) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the Amazon Services; (d) the number of Amazon users who viewed each Picture on demand, in whole or in part, through the Starz channel on Amazon Prime Video; (e) the duration of time Amazon users who selected the Pictures on demand spent watching, streaming or otherwise consuming each of the Pictures through the Starz channel on Amazon Prime Video; (f) the number of Amazon users who viewed each Picture, in whole or in part, through the linear Starz channel on Amazon Prime Video; (g) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the linear Starz channel on Amazon Prime Video.

4.    Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (e.g., user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures who then subscribed to Starz through Amazon.com or any affiliated sites.

5.    Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (e.g., user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that

returned search results that included one or more of the Pictures who then subscribed to Amazon Prime.

6.       Documents sufficient to show any amounts, including without limitation licensing charges, royalties or other fees, that You have paid or are due to pay MGM with respect to each Picture that You have exhibited or otherwise exploited on the Amazon Services, including the dates that you paid or expect to pay the above referenced amounts.

7.       Documents sufficient to show any projections or estimates of amounts that You expect to pay to MGM with respect to each Picture that You have or will exhibit or otherwise exploit on the Amazon Services, including the dates you expect to make the above referenced payments.

8.       Documents sufficient to show the number of Your users who subscribed to or purchased access to the Starz channel—i.e. whose subscription to Starz was initiated through Amazon.com or any affiliated site at any time.

9.        Documents sufficient to show the number of new subscribers to Starz whose subscription to Starz was initiated through Amazon.com or any affiliated site during the relevant period.

10.      All Documents and Communications between You and MGM concerning Starz and/or the Pictures.

11.      All Documents and Communications between You and Epix concerning Starz and/or the Pictures.

12.      All internal Communications or other Documents concerning Starz and/or the Pictures.

13.      All complaints, written or oral, You received concerning Your exhibition or display of Pictures.

14.      All Documents You received, including cease-and-desist letters, claims for damages, and similar Communications concerning Your exhibition or display of Pictures.

15. All Documents and Communications concerning this action, *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, Civil Action No. 2:20-CV-04085 DMG (KSx).

**SCHEDULE B**

| Title |
| --- |
| 10 TO MIDNIGHT |
| 24 HOUR PARTY PEOPLE |
| 8 HEADS IN A DUFFEL BAG |
| ADIOS, SABATA |
| ADVENTURES OF BUCKAROO BANZAI, THE |
| ADVENTURES OF HERCULES |
| ADVENTURES OF PRISCILLA QUEEN OF THE DESERT |
| AGENT CODY BANKS |
| AGENT CODY BANKS 2: DESTINATION LONDON |
| ALAMO, THE |
| ALAMO: THIRTEEN DAYS TO GLORY, THE |
| ALL DOGS GO TO HEAVEN |
| ALL DOGS GO TO HEAVEN 2 |
| ALL OR NOTHING |
| ALLAN QUATERMAIN AND THE LOST CITY |
| AMERICAN NINJA |
| AMERICAN NINJA 4 |
| AMERICAN NINJA II |
| AMERICAN NINJA III |
| AMITYVILLE 3-D |
| AMITYVILLE HORROR (1979), THE |
| AMITYVILLE HORROR (2005), THE |
| AMITYVILLE HORROR, THE |
| ANNIE HALL |
| ANOTHER MAN, ANOTHER CHANCE |
| ANTI-TRUST |
| APACHE |
| ARIZONA WHIRLWIND |
| ASSASSINATION TANGO |
| AT FIRST SIGHT |
| AUTUMN IN NEW YORK |
| AVENGING FORCE |
| BABES IN TOYLAND (ORION) |
| BABY BOOM |
| BABY BOOM (FEATURE) |
| BACK TO SCHOOL |
| BAD INFLUENCE |
| BANDITS |
| BARBERSHOP |
| BARBERSHOP 2: BACK IN BUSINESS |
| BARQUERO |

| |
|---|
| BAT MASTERSON (SEASON 1, EP. 01) |
| BAT MASTERSON (SEASON 1, EP. 02) |
| BAT MASTERSON (SEASON 1, EP. 03) |
| BAT MASTERSON (SEASON 1, EP. 04) |
| BAT MASTERSON (SEASON 1, EP. 05) |
| BAT MASTERSON (SEASON 1, EP. 06) |
| BAT MASTERSON (SEASON 1, EP. 07) |
| BAT MASTERSON (SEASON 1, EP. 08) |
| BAT MASTERSON (SEASON 1, EP. 09) |
| BAT MASTERSON (SEASON 1, EP. 10) |
| BAT MASTERSON (SEASON 1, EP. 11) |
| BAT MASTERSON (SEASON 1, EP. 12) |
| BAT MASTERSON (SEASON 1, EP. 13) |
| BAT MASTERSON (SEASON 1, EP. 14) |
| BAT MASTERSON (SEASON 1, EP. 15) |
| BAT MASTERSON (SEASON 1, EP. 16) |
| BAT MASTERSON (SEASON 1, EP. 17) |
| BAT MASTERSON (SEASON 1, EP. 18) |
| BAT MASTERSON (SEASON 1, EP. 19) |
| BAT MASTERSON (SEASON 1, EP. 20) |
| BAT MASTERSON (SEASON 1, EP. 21) |
| BAT MASTERSON (SEASON 1, EP. 22) |
| BAT MASTERSON (SEASON 1, EP. 23) |
| BAT MASTERSON (SEASON 1, EP. 24) |
| BAT MASTERSON (SEASON 1, EP. 25) |
| BAT MASTERSON (SEASON 1, EP. 26) |
| BAT MASTERSON (SEASON 1, EP. 27) |
| BAT MASTERSON (SEASON 1, EP. 28) |
| BAT MASTERSON (SEASON 1, EP. 29) |
| BAT MASTERSON (SEASON 1, EP. 30) |
| BAT MASTERSON (SEASON 1, EP. 31) |
| BAT MASTERSON (SEASON 1, EP. 32) |
| BAT MASTERSON (SEASON 1, EP. 33) |
| BAT MASTERSON (SEASON 1, EP. 34) |
| BAT MASTERSON (SEASON 1, EP. 35) |
| BAT MASTERSON (SEASON 1, EP. 36) |
| BAT MASTERSON (SEASON 1, EP. 37) |
| BAT MASTERSON (SEASON 2, EP. 01) |
| BAT MASTERSON (SEASON 2, EP. 02) |
| BAT MASTERSON (SEASON 2, EP. 03) |
| BAT MASTERSON (SEASON 2, EP. 04) |
| BAT MASTERSON (SEASON 2, EP. 05) |
| BAT MASTERSON (SEASON 2, EP. 06) |
| BAT MASTERSON (SEASON 2, EP. 07) |
| BAT MASTERSON (SEASON 2, EP. 08) |
| BAT MASTERSON (SEASON 2, EP. 09) |

| |
|---|
| BAT MASTERSON (SEASON 2, EP. 10) |
| BAT MASTERSON (SEASON 2, EP. 11) |
| BAT MASTERSON (SEASON 2, EP. 12) |
| BAT MASTERSON (SEASON 2, EP. 13) |
| BAT MASTERSON (SEASON 2, EP. 14) |
| BAT MASTERSON (SEASON 2, EP. 15) |
| BAT MASTERSON (SEASON 2, EP. 16) |
| BAT MASTERSON (SEASON 2, EP. 17) |
| BAT MASTERSON (SEASON 2, EP. 18) |
| BAT MASTERSON (SEASON 2, EP. 19) |
| BAT MASTERSON (SEASON 2, EP. 20) |
| BAT MASTERSON (SEASON 2, EP. 21) |
| BAT MASTERSON (SEASON 2, EP. 22) |
| BAT MASTERSON (SEASON 2, EP. 23) |
| BAT MASTERSON (SEASON 2, EP. 24) |
| BAT MASTERSON (SEASON 2, EP. 25) |
| BAT MASTERSON (SEASON 2, EP. 26) |
| BAT MASTERSON (SEASON 2, EP. 27) |
| BAT MASTERSON (SEASON 2, EP. 28) |
| BAT MASTERSON (SEASON 2, EP. 29) |
| BAT MASTERSON (SEASON 2, EP. 30) |
| BAT MASTERSON (SEASON 2, EP. 31) |
| BAT MASTERSON (SEASON 2, EP. 32) |
| BAT MASTERSON (SEASON 2, EP. 33) |
| BAT MASTERSON (SEASON 2, EP. 34) |
| BAT MASTERSON (SEASON 2, EP. 35) |
| BAT MASTERSON (SEASON 2, EP. 36) |
| BAT MASTERSON (SEASON 2, EP. 37) |
| BAT MASTERSON (SEASON 3, EP. 01) |
| BAT MASTERSON (SEASON 3, EP. 02) |
| BAT MASTERSON (SEASON 3, EP. 03) |
| BAT MASTERSON (SEASON 3, EP. 04) |
| BAT MASTERSON (SEASON 3, EP. 05) |
| BAT MASTERSON (SEASON 3, EP. 06) |
| BAT MASTERSON (SEASON 3, EP. 07) |
| BAT MASTERSON (SEASON 3, EP. 08) |
| BAT MASTERSON (SEASON 3, EP. 09) |
| BAT MASTERSON (SEASON 3, EP. 10) |
| BAT MASTERSON (SEASON 3, EP. 11) |
| BAT MASTERSON (SEASON 3, EP. 12) |
| BAT MASTERSON (SEASON 3, EP. 13) |
| BAT MASTERSON (SEASON 3, EP. 14) |
| BAT MASTERSON (SEASON 3, EP. 15) |
| BAT MASTERSON (SEASON 3, EP. 16) |
| BAT MASTERSON (SEASON 3, EP. 17) |
| BAT MASTERSON (SEASON 3, EP. 18) |

| |
|---|
| BAT MASTERSON (SEASON 3, EP. 19) |
| BAT MASTERSON (SEASON 3, EP. 20) |
| BAT MASTERSON (SEASON 3, EP. 21) |
| BAT MASTERSON (SEASON 3, EP. 22) |
| BAT MASTERSON (SEASON 3, EP. 23) |
| BAT MASTERSON (SEASON 3, EP. 24) |
| BAT MASTERSON (SEASON 3, EP. 25) |
| BAT MASTERSON (SEASON 3, EP. 26) |
| BAT MASTERSON (SEASON 3, EP. 27) |
| BAT MASTERSON (SEASON 3, EP. 28) |
| BAT MASTERSON (SEASON 3, EP. 29) |
| BAT MASTERSON (SEASON 3, EP. 30) |
| BAT MASTERSON (SEASON 3, EP. 31) |
| BAT MASTERSON (SEASON 3, EP. 32) |
| BAT MASTERSON (SEASON 3, EP. 33) |
| BAT MASTERSON (SEASON 3, EP. 34) |
| BE COOL |
| BEAST WITHIN, THE |
| BEAT STREET |
| BEAUTY SHOP |
| BENNY & JOON |
| BEST MEN |
| BEST SELLER |
| BIG COUNTRY, THE |
| BILL & TED'S BOGUS JOURNEY |
| BILL & TED'S EXCELLENT ADVENTURE |
| BILLY TWO HATS |
| BIO-DOME |
| BIRDCAGE, THE |
| BLACK CAESAR |
| BLACK MAMA, WHITE MAMA |
| BLACK STALLION RETURNS, THE |
| BLACK STALLION, THE |
| BLACULA |
| BLOOD SIMPLE |
| BLOODSPORT |
| BLOODY MAMA |
| BLOW OUT |
| BLOWN AWAY |
| BLUE STEEL |
| BLUE VELVET |
| BODY OF EVIDENCE |
| BOWLING FOR COLUMBINE |
| BRADDOCK: MIA 3 |
| BRADDOCK: MISSING IN ACTION III |
| BRASS LEGEND, THE |

| |
|---|
| BREAKER! BREAKER! |
| BREAKHEART PASS |
| BREAKIN' |
| BREAKIN' 2: ELECTRIC BOOGALOO |
| BRIDGE TOO FAR, A |
| BRIGHT LIGHTS, BIG CITY |
| BRING ME THE HEAD OF ALFREDO GARCIA |
| BROKEN STAR, THE |
| BUBBA HO-TEP |
| BUCKTOWN, U.S.A. |
| BUFFALO BILL AND THE INDIANS |
| BULL DURHAM |
| BULLETPROOF |
| BULLETPROOF MONK |
| CADILLAC MAN |
| CANADIAN BACON |
| CAPOTE |
| CARBON COPY (EPIC) |
| CARE BEARS MOVIE, THE |
| CARRIE |
| CARRIE (TV MOVIE) |
| CAST A LONG SHADOW |
| CHARLIE BARTLETT |
| CHATO'S LAND |
| CHEECH & CHONG'S THE CORSICAN BROTHERS |
| CHERRY 2000 |
| CHILD'S PLAY |
| CHILD'S PLAY (1988) |
| CHINA MOON |
| CHITTY CHITTY BANG BANG |
| CLAIM, THE |
| CLAMBAKE |
| CLASS |
| CLEAN SLATE |
| CODE 46 |
| CODE OF SILENCE |
| COFFEE AND CIGARETTES |
| COFFY |
| COLORS |
| COMANCHE |
| COMEDY'S DIRTIEST DOZEN |
| COMES A HORSEMAN |
| COMPANY BUSINESS |
| COTTON CLUB, THE |
| COTTON COMES TO HARLEM |
| COUCH TRIP, THE |

| |
|---|
| CQ |
| CRIMINAL LAW |
| CROCODILE HUNTER: COLLISION COURSE, THE |
| CRUSOE |
| CURSE (EPIC), THE |
| CURSE II: THE BITE |
| CURSE OF THE PINK PANTHER |
| CUTTING EDGE, THE |
| CYBORG |
| DALTON GIRLS, THE |
| DANCES WITH WOLVES |
| DANGEROUS GAME |
| DARK ANGEL |
| DARK BLUE |
| DARK HALF, THE |
| DAVY CROCKETT, INDIAN SCOUT |
| DAY OF THE OUTLAW |
| DEAD OF WINTER |
| DEATH RIDES A HORSE |
| DEATH VALLEY RANGERS |
| DEATH WARRANT |
| DEATH WISH 2 |
| DEATH WISH III |
| DEATH WISH IV |
| DEATH WISH V |
| DECEIVER |
| DEFIANT ONES, THE (TV MOVIE) |
| DELIRIOUS |
| DE-LOVELY |
| DELTA FORCE |
| DELTA FORCE 2 |
| DESPERATELY SEEKING SUSAN |
| DIAMONDS ARE FOREVER |
| DIARY OF A HITMAN |
| DIE ANOTHER DAY |
| DIGGSTOWN |
| DIRTY DOZEN: DEADLY MISSION |
| DIRTY ROTTEN SCOUNDRELS |
| DIRTY WORK |
| DISTURBING BEHAVIOR |
| DOC |
| DOGS OF WAR, THE |
| DOUBLE IMPACT |
| DR. NO |
| DRANGO |
| DRESSED TO KILL |

| |
|---|
| DRY WHITE SEASON, A |
| DUEL AT DIABLO |
| EASY MONEY |
| ELEPHANT TALES (DTV) |
| ERIK THE VIKING |
| ESCORT WEST |
| EVE OF DESTRUCTION |
| EVERYTHING YOU ALWAYS…SEX |
| EXTREMITIES |
| FALCON AND THE SNOWMAN, THE |
| FAME |
| FARGO |
| FATAL BEAUTY |
| FATAL INSTINCT |
| FAVOR, THE |
| FIDDLER ON THE ROOF |
| FIRES WITHIN |
| FIREWALKER |
| FIRST POWER, THE |
| FISH CALLED WANDA, A |
| FISTFUL OF DOLLARS, A |
| FISTFUL OF DYNAMITE, A |
| FIVE GUNS TO TOMBSTONE |
| FIVE GUNS WEST |
| FLASH GORDON |
| FLAWLESS |
| FLED |
| FLESH + BLOOD |
| FLUKE |
| FLYBOYS |
| FLYING SCOTSMAN, THE |
| FOR A FEW DOLLARS MORE |
| FOR YOUR EYES ONLY |
| FORCE 10 FROM NAVARONE |
| FORT BOWIE |
| FORT DEFIANCE |
| FORT MASSACRE |
| FORT YUMA |
| FORTUNE COOKIE, THE |
| FOUR WEDDINGS AND A FUNERAL |
| FOXY BROWN |
| FRANKIE AND JOHNNY |
| FRENCH LIEUTENANT'S WOMAN, THE |
| FRIDAY FOSTER |
| FROG PRINCE, THE |
| FROM NOON TILL THREE |

| |
|---|
| FROM RUSSIA WITH LOVE |
| FRONTIER UPRISING |
| FULL MOON HIGH |
| FURY AT SHOWDOWN |
| FX |
| FX II |
| GAMBLER WORE A GUN, THE |
| GANG RELATED |
| GERONIMO |
| GET SHORTY |
| GETTING EVEN WITH DAD |
| GHOST TOWN |
| GHOST WORLD |
| GHOULIES |
| GHOULIES II |
| GOD FORGIVES, I DON'T |
| GOLDENEYE |
| GOLDFINGER |
| GOOD, THE BAD AND THE UGLY, THE |
| GREAT ESCAPE, THE |
| GREAT SCOUT AND CATHOUSE THURSDAY, THE |
| GREAT TRAIN ROBBERY, THE |
| GUN BELT |
| GUN BROTHERS |
| GUN DUEL IN DURANGO |
| GUN FEVER |
| GUN THE MAN DOWN |
| GUNFIGHT |
| GUNFIGHT AT DODGE CITY, THE |
| GUNFIGHTERS OF ABILENE |
| GUNS OF THE MAGNIFICENT SEVEN |
| GUNSIGHT RIDGE |
| GUNSLINGER |
| GUY THING, A |
| HACKERS |
| HAIR |
| HALLELUJAH TRAIL, THE |
| HALLIDAY BRAND, THE |
| HANG 'EM HIGH |
| HANNAH AND HER SISTERS |
| HANNIBAL |
| HANSEL AND GRETEL (1987) |
| HARD RIDE, THE |
| HARLEY DAVIDSON AND THE MARLBORO MAN |
| HART'S WAR |
| HEARTBREAKERS |

| |
|---|
| HEAVEN'S GATE |
| HELL UP IN HARLEM |
| HERCULES |
| HERO AND THE TERROR |
| HICKEY AND BOGGS |
| HIGH NOON PART II: THE RETURN OF WILL KA |
| HIGH SPIRITS (EPIC) |
| HIGHWAY TO HELL |
| HILLS RUN RED, THE |
| HOLLYWOOD SHUFFLE |
| HOME OF THE BRAVE |
| HOODLUM |
| HOOSIERS |
| HORSE SOLDIERS, THE |
| HOT SPOT, THE |
| HOT TUB TIME MACHINE |
| HOTEL RWANDA |
| HOUR OF THE GUN |
| HOUSE ON CARROLL STREET, THE |
| HOW TO LOSE FRIENDS AND ALIENATE PEOPLE |
| HOW TO STUFF A WILD BIKINI |
| HUCKLEBERRY FINN |
| HUNTING PARTY (1971), THE |
| ILLEGALLY YOURS |
| I'M GONNA GIT YOU SUCKA |
| IMPROMPTU |
| IN THE HEAT OF THE NIGHT (FEATURE) |
| IN THE TIME OF THE BUTTERFLIES |
| INDIAN FIGHTER, THE |
| INTO THE BLUE |
| INVADERS FROM MARS |
| INVASION OF THE BODY SNATCHERS |
| INVASION U.S.A. |
| INVITATION TO A GUNFIGHTER |
| IRON SHERIFF, THE |
| JACKIE ROBINSON STORY, THE |
| JANUARY MAN, THE |
| JASON'S LYRIC |
| JEEPERS CREEPERS |
| JEEPERS CREEPERS 2 |
| JOHNNY BE GOOD |
| JOURNEY TO THE CENTER OF THE EARTH |
| KALIFORNIA |
| KENTUCKIAN, THE |
| KID COLTER |
| KILL ME AGAIN |

| |
|---|
| KILLER ELITE, THE |
| KILLER KLOWNS FROM OUTER SPACE |
| KILLING ME SOFTLY (2003) |
| KILLING ME SOFTLY (MGM) |
| KING SOLOMON'S MINES (CANNON) |
| KINJITE: FORBIDDEN SUBJECTS |
| LADY VANISHES (HITCHCOCK), THE |
| LARGER THAN LIFE |
| LARS AND THE REAL GIRL |
| LAWMAN |
| LEAVING LAS VEGAS |
| LEGALLY BLONDE |
| LEGALLY BLONDE 2: RED, WHITE AND BLONDE |
| LEVIATHAN |
| LICENSE TO KILL |
| LIFE STINKS |
| LIFEFORCE |
| LILIES OF THE FIELD |
| LIONS FOR LAMBS |
| LITTLE DORRIT (PART 1) |
| LITTLE DORRIT (PART 2) |
| LITTLE MAN TATE |
| LIVE AND LET DIE |
| LIVIN' LARGE |
| LIVING DAYLIGHTS, THE |
| LOCH NESS |
| LONE GUN, THE |
| LONE WOLF MCQUADE |
| LONG RIDERS, THE |
| LONGSHOT, THE |
| LORD OF ILLUSIONS |
| LOVE FIELD |
| MAD MAX |
| MADHOUSE (1990) |
| MAGNIFICENT SEVEN (1960), THE |
| MAGNIFICENT SEVEN RIDE!, THE |
| MAGNIFICENT SEVEN, THE |
| MALONE |
| MAN FROM DEL RIO |
| MAN IN THE IRON MASK, THE |
| MAN OF THE EAST |
| MAN OF THE WEST |
| MAN WITH THE GOLDEN GUN, THE |
| MANCHURIAN CANDIDATE, THE |
| MANHATTAN |
| MARRIED TO THE MOB |

| |
|---|
| MARRIED TO THE MOB (FEATURE) |
| MASTERS OF THE UNIVERSE |
| MECHANIC, THE |
| MEDGAR EVERS STORY, THE |
| MEMORIES OF ME |
| MEN AT WORK |
| MERMAIDS |
| MESSENGER OF DEATH |
| METEOR MAN, THE |
| MIAMI BLUES |
| MIDNIGHT COWBOY |
| MIDNIGHT HEAT |
| MIGHTY QUINN, THE |
| MISSING IN ACTION |
| MISSING IN ACTION 2 THE BEGINNING |
| MISSISSIPPI BURNING |
| MISSOURI BREAKS, THE |
| MOD SQUAD, THE |
| MONKEY SHINES: AN EXPERIMENT IN FEAR |
| MONSTER DOG |
| MOONRAKER |
| MOONSTRUCK |
| MORE DEAD THAN ALIVE |
| MOTEL HELL |
| MR. BROOKS |
| MR. MAJESTYK |
| MR. MOM |
| MULHOLLAND FALLS |
| MURPHY'S LAW |
| MYSTIC PIZZA |
| NATIONAL LAMPOON'S MOVIE MADNESS |
| NAVAJO JOE |
| NAVY SEALS |
| NED KELLY |
| NEVER SAY NEVER AGAIN |
| NICHOLAS NICKLEBY |
| NIGHT OF THE COMET |
| NIGHT OF THE DEMONS |
| NO MAN'S LAND |
| NO SUCH THING |
| NO WAY OUT |
| NOOSE FOR A GUNMAN |
| OCTOPUSSY |
| OF MICE AND MEN |
| OKLAHOMA TERRITORY |
| ON HER MAJESTY'S SECRET SERVICE |

| |
|---|
| ONCE BITTEN |
| ONCE UPON A CRIME |
| ORGANIZATION, THE |
| ORIGINAL GANGSTAS |
| ORIGINAL SIN |
| OUT OF TIME |
| OUTLAW'S SON |
| OVERBOARD (1987) |
| OVERLAND PACIFIC |
| PACKAGE, THE |
| PAJAMA PARTY |
| PEBBLE AND THE PENGUIN, THE |
| PENITENTIARY |
| PENITENTIARY 2 |
| PENITENTIARY 3 |
| PEOPLE THAT TIME FORGOT, THE |
| PEREZ FAMILY, THE |
| PINK AT FIRST SIGHT |
| PINK PANTHER (1964), THE |
| PINK PANTHER (2006), THE |
| PINK PANTHER 2, THE |
| PINK PANTHER STRIKES AGAIN, THE |
| PINK PANTHER, THE |
| PIONEER WOMAN |
| PLATOON |
| POLTERGEIST II: THE OTHER SIDE |
| POLTERGEIST III |
| POPE OF GREENWICH VILLAGE |
| POSSE |
| PRANCER |
| PUMPKINHEAD |
| PUMPKINHEAD II: BLOOD WINGS |
| PURPLE ROSE OF CAIRO, THE |
| QUIGLEY DOWN UNDER |
| QUINCANNON, FRONTIER SCOUT |
| RADIO DAYS |
| RAGE - CARRIE 2, THE |
| RAGE IN HARLEM, A |
| RAGING BULL |
| RAIN MAN |
| RANCHO DELUXE |
| REAL MEN |
| REASON TO LIVE, A REASON TO DIE, A |
| REBEL IN TOWN |
| RED CORNER |
| RED DAWN |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| |
|---|
| RED DAWN (1984) |
| RED RIDING HOOD |
| RED RIVER (1948) |
| RED RIVER (FEATURE) |
| RED RIVER (TV MOVIE) |
| REMO WILLIAMS: THE ADVENTURE BEGINS... |
| RESCUE DAWN |
| RETURN OF A MAN CALLED HORSE |
| RETURN OF SABATA |
| RETURN OF SABATA, THE |
| RETURN OF THE PINK PANTHER |
| RETURN OF THE SEVEN |
| RETURN TO ME |
| REVENGE OF THE PINK PANTHER |
| REVOLT AT FORT LARAMIE |
| RIDE BACK, THE |
| RIDE OUT FOR REVENGE |
| RIVER OF DEATH |
| ROAD HOUSE |
| ROB ROY |
| ROBBERS' ROOST |
| ROBBERY UNDER ARMS |
| ROBOCOP |
| ROBOCOP (1987) |
| ROBOCOP 2 |
| ROBOCOP 3 |
| ROCKY |
| ROCKY BALBOA |
| ROCKY II |
| ROCKY III |
| ROCKY IV |
| ROCKY V |
| ROLLERBALL (1975) |
| ROLLERBALL (2002) |
| ROLLING THUNDER |
| ROMANTIC COMEDY |
| RONIN |
| RUNAWAY TRAIN |
| RUNNING SCARED |
| RUNNING TARGET |
| RUSSIA HOUSE, THE |
| SABATA |
| SABOTAGE |
| SAHARA |
| SALT AND PEPPER |
| SAM WHISKEY |

| |
|---|
| SCORPIO |
| SCREAM, BLACULA, SCREAM! |
| SECRET OF N.I.M.H. 2:TIMMY TO THE RESCUE |
| SECRET OF N.I.M.H., THE |
| SECRET OF NIMH, THE |
| SHATTERED |
| SHEBA, BABY |
| SHE-DEVIL |
| SHE'S GOTTA HAVE IT |
| SHOT IN THE DARK, A |
| SHOWGIRLS |
| SIEGE OF FIREBASE GLORIA, THE |
| SIX DEGREES OF SEPARATION |
| SKI PATROL |
| SLAUGHTER |
| SLEEPER |
| SLEEPOVER |
| SODA CRACKER |
| SOLARBABIES |
| SOME GIRLS |
| SOMETHING WILD (1986) |
| SOMETHING WILD (ORION) |
| SOMETIMES THEY COME BACK |
| SON OF THE PINK PANTHER |
| SONORA STAGECOACH |
| SOUL PLANE |
| SOUTHWEST PASSAGE |
| SPACEBALLS |
| SPECIES |
| SPECIES II |
| SPECIES III |
| SPECIES: THE AWAKENING (DTV) |
| SPELLBINDER |
| SPIKES GANG, THE |
| SPILL |
| SPY WHO LOVED ME, THE |
| STAGECOACH |
| STARGATE |
| STARGATE: CONTINUUM |
| STARGATE: CONTINUUM (DTV) |
| STARGATE: THE ARK OF TRUTH (DTV) |
| STIGMATA |
| STRANGE INVADERS |
| STREET SMART |
| SUPERNOVA |
| SUPPORT YOUR LOCAL GUNFIGHTER |

| |
|---|
| SUPPORT YOUR LOCAL SHERIFF! |
| SWORD OF THE VALIANT |
| TALES OF TERROR |
| TANK GIRL |
| TEA WITH MUSSOLINI |
| TEEN WOLF (1985) |
| TEEN WOLF (FEATURE) |
| TEEN WOLF TOO |
| TERMINATOR, THE |
| TERROR IN A TEXAS TOWN |
| TEXAS CHAINSAW MASSACRE 2 |
| THELMA & LOUISE |
| THEY CALL ME MISTER TIBBS! |
| THIEF |
| THIRTY-NINE STEPS (HITCHCOCK), THE |
| THOMAS CROWN AFFAIR (1968), THE |
| THOMAS CROWN AFFAIR (1999), THE |
| THROW MOMMA FROM THE TRAIN |
| THUNDERBALL |
| THUNDERBOLT AND LIGHTFOOT |
| TIGER'S TAIL, THE |
| TO LIVE AND DIE IN L.A. |
| TOM SAWYER |
| TOMAHAWK TRAIL |
| TOMORROW NEVER DIES |
| TOP GUN |
| TOUCH |
| TOUGHEST GUN IN TOMBSTONE |
| TRAIL OF THE PINK PANTHER |
| TROOPER HOOK |
| TRUE HEART |
| TWO WEEKS |
| UHF |
| UNDERCOVER BLUES |
| UNFORGIVEN, THE |
| UNTAMED HEART |
| UPTOWN GIRLS |
| USUAL SUSPECTS, THE |
| VALDEZ IS COMING |
| VALERIE |
| VALKYRIE |
| VALLEY GIRL |
| VAMPIRE'S KISS |
| VIEW TO A KILL, A |
| WALKING TALL (2004) |
| WANDA NEVADA |

| |
|---|
| WAR DRUMS |
| WAR PAINT |
| WARGAMES |
| WARGAMES (1983) |
| WAY WEST, THE |
| WEDDING DAZE |
| WE'LL NEVER HAVE PARIS |
| WEST SIDE STORY |
| WHAT'S THE WORST THAT COULD HAPPEN? |
| WHITE BUFFALO, THE |
| WICKER PARK |
| WILD AT HEART |
| WILD BILL |
| WINDTALKERS |
| WITCHBOARD |
| WOMAN IN RED, THE |
| WOMEN OF SAN QUENTIN |
| WONDERFUL COUNTRY, THE |
| WOODS, THE |
| WORLD IS NOT ENOUGH, THE |
| YELLOW TOMAHAWK, THE |
| YELLOWBEARD |
| YOU ONLY LIVE TWICE |
| YOUNG BILLY YOUNG |
| YOUNG RIDERS, THE (68x60') |
| YOUNGBLOOD (1986) |

Exhibit 4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California  ▾

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC | ) |
| _Plaintiff_ | ) |
| v. | ) |
| MGM DOMESTIC TELEVISION | ) |
| DISTRIBUTION LLC, | ) |
| _Defendant_ | ) |

Civil Action No.  2:20-CV-04085 DMG (KSx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Amazon.com, Inc. c/o Corporation Service Company
2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833.

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: First Legal Records c/o Seattle Legal Messenger Services, 4201 Aurora Ave. N. #200, Seattle, WA 98103 | Date and Time: April 27, 2022    10:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  April 12, 2022

|  CLERK OF COURT | OR | |
|---|---|---|
| _____ | | /s/ Steven Goldberg |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Starz Entertainment, LLC _____ , who issues or requests this subpoena, are:

Steven Goldberg,17383 West Sunset Boulevard, Suite A380, sgoldberg@mzclaw.com, 310-990-4109

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:20-CV-04085 DMG (KSx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

The following definitions shall apply to the Requests for Production (the "Requests") contained herein:

1.      The term "Affiliate" means and refers to any Person (including any entity) that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, a Person (including an entity).

2.      The term "Communication" means and refers to every manner or means of disclosure, transfer or exchange of information, whether orally, in writing, face to face, by telephone, mail, e-mail, short message service, multimedia message, text message, personal delivery or otherwise.

3.      The term "concerning" and any derivative thereof means and refers to constituting, evidencing, reflecting, incorporating, effecting, including or otherwise pertaining or relating to, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the Request.

4.      The terms "Document" or "Documents" shall have the broadest meaning permissible consistent with Rule 34 of the Federal Rules of Civil Procedure.  A draft, annotated or otherwise non-identical copy, including a copy with handwritten notes, is a separate Document within the meaning of this term.  Communications are Documents within the meaning of this term.

5.      The terms "Amazon", "You" and "Your" means and refers to Amazon.com, Inc., and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates (including, but not limited to, Amazon.com Services LLC), subsidiaries, predecessors or assigns.

6.      The term "Amazon Services" means and refers to every manner and means of watching, streaming, searching for, renting, purchasing or otherwise consuming motion

pictures and television series directly through Amazon's platforms, including but not limited to Amazon Prime Video, except that the term "Amazon Services" does not refer to watching, streaming, searching for, renting, purchasing or otherwise consuming motion pictures and television series through the Starz channel on Amazon Prime Video.  The term "Amazon Services" also does not include the sale of physical DVDs, laser discs, VHS tapes or any other physical medium containing one or more of the Pictures.

7.     The terms "MGM" or "Defendant" mean and refer to MGM Domestic Television Distribution LLC and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates, subsidiaries, predecessors or assigns.

8.     The terms "EPIX" means and refers to EPIX Entertainment LLC, and its consultants, advisors, representatives, agents, attorneys, accountants, employees, and all Persons acting or purporting to act on behalf of any of the foregoing (individually or collectively including all past or present employees or managers exercising discretion in making policies or decisions), as well as any Affiliates, subsidiaries, predecessors or assigns.

9.     The terms "Person" or "Persons" mean and refer to any individual, corporation, limited liability company, partnership, firm, association, government agency or other organization recognizable at law, and its directors, officers, agents and employees.

10.    The term "Pictures" means and refers to any of the motion picture and television series listed in Schedule B attached hereto.

11.    The terms "Starz" or "Plaintiff" mean and refer to Starz Entertainment, LLC, as well as its consultants, advisors, representatives, agents, attorneys, accountants, employees and all Persons acting or purporting to act on behalf of any of the foregoing.

## **INSTRUCTIONS**

1.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope.

2.      The use of the singular form of any word includes the plural and vice versa; the use of the masculine includes the feminine, and the use of the feminine includes the masculine.

3.      "Any" shall be construed to include "all" and vice versa, and "all" shall be construed to include "each" and vice versa, as is necessary to make the Request inclusive rather than exclusive.

4.      The words "and," "and/or" and "or" shall be construed conjunctively or disjunctively, as is necessary to make the Request inclusive rather than exclusive.

5.      The words "include," "includes" and "including" shall be construed to mean "include, but not be limited to," "includes, but is not limited to" and "including, but not limited to," respectively.

6.      If, in responding to these Requests, You claim any ambiguity in the Request, such claim shall not be utilized as a basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation used in responding to the Request.

7.      The Requests shall be deemed to be continuing in nature and your responses to them are to be promptly supplemented or amended if, after the time of your initial responses, you learn that any response is or has become in some material respect incomplete or incorrect.

8.      Unless otherwise indicated, the relevant time period for the Requests is from January 1, 2013, to the date of the responses.

9.      The Requests call for the production of all responsive Documents that are in Your possession, custody or control, wherever located, regardless of whether they are

possessed directly by You or Your agents, representatives, employees, accountants, attorneys or other Persons acting or purporting to act on Your behalf.

10.     If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

11.     Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation or exclusion.

12.     Where a Request seeks Documents from a particular period, undated Documents shall be presumed to be from or concerning that period.

13.     All Documents and Communications should be produced for copying or inspection as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific Request(s) to which they are responsive.  You shall produce the Documents and Communications requested herein, including electronic Documents and Communications, in the original file folders, boxes or other containers or binders in which such items are found, including the title, labels or other description of each such folder, box or other container, or attach a copy of the Documents or Communications to copies of the file folders from which they came.  The integrity and internal sequence of the requested Documents and Communications within each folder shall not be disturbed or commingled with the contents of another folder.  All Documents and Communications should be stored, clipped, stapled or otherwise arranged in the same form and manner as they were found.  If a Document or Communication is responsive to more than one Request, You are not required to duplicate production.

14.     Plaintiff reserves the right to view the original of any copy of a Document or Communication provided in response to the Requests.  By accepting a copy of a Document or Communication provided in response to any Request, Plaintiff does not waive the right to view or inspect any original Document or Communication.

15.     If any objection is made to any of the Requests, the response shall state whether Documents or Communications are being withheld from inspection and production on

the basis of such objection, or whether inspection or production of the responsive items will occur notwithstanding such objection.

16.     If You object to a Request and withhold any information or Document requested herein pursuant to a claim of privilege, work product or other discovery protection, state with respect to each such Document:  (a) the privilege upon which You are relying; (b) the type of Document (*e.g.*, letter, memorandum); (c) the date of the Document; (d) the name and title of the author; (e) the name and title of the addressee; (f) the names and titles of all recipients; and (g) a general description of the subject matter of the Document, including all information necessary to determine the basis for assertion of the privilege or protection.

17.     If You claim privilege with regard to only part of a Document or Communication, produce the non-privileged part and furnish a list identifying each item that is partially withheld based on a claim of privilege together with the information listed in the preceding paragraph.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  All agreements pursuant to which You were granted a license or other authorization to exhibit or otherwise exploit any of the Pictures on any Amazon Services.

2.  Documents sufficient to show the date(s) on which each Picture was exhibited, available for watching or streaming, or otherwise exploited on any Amazon Services.

3.  Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (*e.g.*, user zip code or other geographic designation):  (a) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures; (b) the number of Amazon users who viewed each Picture, in whole or in part, through the Amazon Services; (c) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the Amazon Services; (d) the number of Amazon users who viewed each Picture on demand, in whole or in part, through the Starz channel on Amazon Prime Video; (e) the duration of time Amazon users who selected the Pictures on demand spent watching, streaming or otherwise consuming each of the Pictures through the Starz channel on Amazon Prime Video; (f) the number of Amazon users who viewed each Picture, in whole or in part, through the linear Starz channel on Amazon Prime Video; (g) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the linear Starz channel on Amazon Prime Video.

4.  Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (e.g., user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures who then subscribed to Starz through Amazon.com or any affiliated sites.

5.  Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (e.g., user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that

returned search results that included one or more of the Pictures who then subscribed to Amazon Prime.

6. Documents sufficient to show any amounts, including without limitation licensing charges, royalties or other fees, that You have paid or are due to pay MGM with respect to each Picture that You have exhibited or otherwise exploited on the Amazon Services, including the dates that you paid or expect to pay the above referenced amounts.

7. Documents sufficient to show any projections or estimates of amounts that You expect to pay to MGM with respect to each Picture that You have or will exhibit or otherwise exploit on the Amazon Services, including the dates you expect to make the above referenced payments.

8. Documents sufficient to show the number of Your users who subscribed to or purchased access to the Starz channel—i.e. whose subscription to Starz was initiated through Amazon.com or any affiliated site at any time.

9. Documents sufficient to show the number of new subscribers to Starz whose subscription to Starz was initiated through Amazon.com or any affiliated site during the relevant period.

10. All Documents and Communications between You and MGM concerning Starz and/or the Pictures.

11. All Documents and Communications between You and Epix concerning Starz and/or the Pictures.

12. All internal Communications or other Documents concerning Starz and/or the Pictures.

13. All complaints, written or oral, You received concerning Your exhibition or display of Pictures.

14. All Documents You received, including cease-and-desist letters, claims for damages, and similar Communications concerning Your exhibition or display of Pictures.

15.     All Documents and Communications concerning this action, *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, Civil Action No. 2:20-CV-04085 DMG (KSx).

**SCHEDULE B**

| Title |
| --- |
| 10 TO MIDNIGHT |
| 24 HOUR PARTY PEOPLE |
| 8 HEADS IN A DUFFEL BAG |
| ADIOS, SABATA |
| ADVENTURES OF BUCKAROO BANZAI, THE |
| ADVENTURES OF HERCULES |
| ADVENTURES OF PRISCILLA QUEEN OF THE DESERT |
| AGENT CODY BANKS |
| AGENT CODY BANKS 2: DESTINATION LONDON |
| ALAMO, THE |
| ALAMO: THIRTEEN DAYS TO GLORY, THE |
| ALL DOGS GO TO HEAVEN |
| ALL DOGS GO TO HEAVEN 2 |
| ALL OR NOTHING |
| ALLAN QUATERMAIN AND THE LOST CITY |
| AMERICAN NINJA |
| AMERICAN NINJA 4 |
| AMERICAN NINJA II |
| AMERICAN NINJA III |
| AMITYVILLE 3-D |
| AMITYVILLE HORROR (1979), THE |
| AMITYVILLE HORROR (2005), THE |
| AMITYVILLE HORROR, THE |
| ANNIE HALL |
| ANOTHER MAN, ANOTHER CHANCE |
| ANTI-TRUST |
| APACHE |
| ARIZONA WHIRLWIND |
| ASSASSINATION TANGO |
| AT FIRST SIGHT |
| AUTUMN IN NEW YORK |
| AVENGING FORCE |
| BABES IN TOYLAND (ORION) |
| BABY BOOM |
| BABY BOOM (FEATURE) |
| BACK TO SCHOOL |
| BAD INFLUENCE |
| BANDITS |
| BARBERSHOP |
| BARBERSHOP 2: BACK IN BUSINESS |
| BARQUERO |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| |
|---|
| BAT MASTERSON (SEASON 1, EP. 01) |
| BAT MASTERSON (SEASON 1, EP. 02) |
| BAT MASTERSON (SEASON 1, EP. 03) |
| BAT MASTERSON (SEASON 1, EP. 04) |
| BAT MASTERSON (SEASON 1, EP. 05) |
| BAT MASTERSON (SEASON 1, EP. 06) |
| BAT MASTERSON (SEASON 1, EP. 07) |
| BAT MASTERSON (SEASON 1, EP. 08) |
| BAT MASTERSON (SEASON 1, EP. 09) |
| BAT MASTERSON (SEASON 1, EP. 10) |
| BAT MASTERSON (SEASON 1, EP. 11) |
| BAT MASTERSON (SEASON 1, EP. 12) |
| BAT MASTERSON (SEASON 1, EP. 13) |
| BAT MASTERSON (SEASON 1, EP. 14) |
| BAT MASTERSON (SEASON 1, EP. 15) |
| BAT MASTERSON (SEASON 1, EP. 16) |
| BAT MASTERSON (SEASON 1, EP. 17) |
| BAT MASTERSON (SEASON 1, EP. 18) |
| BAT MASTERSON (SEASON 1, EP. 19) |
| BAT MASTERSON (SEASON 1, EP. 20) |
| BAT MASTERSON (SEASON 1, EP. 21) |
| BAT MASTERSON (SEASON 1, EP. 22) |
| BAT MASTERSON (SEASON 1, EP. 23) |
| BAT MASTERSON (SEASON 1, EP. 24) |
| BAT MASTERSON (SEASON 1, EP. 25) |
| BAT MASTERSON (SEASON 1, EP. 26) |
| BAT MASTERSON (SEASON 1, EP. 27) |
| BAT MASTERSON (SEASON 1, EP. 28) |
| BAT MASTERSON (SEASON 1, EP. 29) |
| BAT MASTERSON (SEASON 1, EP. 30) |
| BAT MASTERSON (SEASON 1, EP. 31) |
| BAT MASTERSON (SEASON 1, EP. 32) |
| BAT MASTERSON (SEASON 1, EP. 33) |
| BAT MASTERSON (SEASON 1, EP. 34) |
| BAT MASTERSON (SEASON 1, EP. 35) |
| BAT MASTERSON (SEASON 1, EP. 36) |
| BAT MASTERSON (SEASON 1, EP. 37) |
| BAT MASTERSON (SEASON 2, EP. 01) |
| BAT MASTERSON (SEASON 2, EP. 02) |
| BAT MASTERSON (SEASON 2, EP. 03) |
| BAT MASTERSON (SEASON 2, EP. 04) |
| BAT MASTERSON (SEASON 2, EP. 05) |
| BAT MASTERSON (SEASON 2, EP. 06) |
| BAT MASTERSON (SEASON 2, EP. 07) |
| BAT MASTERSON (SEASON 2, EP. 08) |
| BAT MASTERSON (SEASON 2, EP. 09) |

| |
|---|
| BAT MASTERSON (SEASON 2, EP. 10) |
| BAT MASTERSON (SEASON 2, EP. 11) |
| BAT MASTERSON (SEASON 2, EP. 12) |
| BAT MASTERSON (SEASON 2, EP. 13) |
| BAT MASTERSON (SEASON 2, EP. 14) |
| BAT MASTERSON (SEASON 2, EP. 15) |
| BAT MASTERSON (SEASON 2, EP. 16) |
| BAT MASTERSON (SEASON 2, EP. 17) |
| BAT MASTERSON (SEASON 2, EP. 18) |
| BAT MASTERSON (SEASON 2, EP. 19) |
| BAT MASTERSON (SEASON 2, EP. 20) |
| BAT MASTERSON (SEASON 2, EP. 21) |
| BAT MASTERSON (SEASON 2, EP. 22) |
| BAT MASTERSON (SEASON 2, EP. 23) |
| BAT MASTERSON (SEASON 2, EP. 24) |
| BAT MASTERSON (SEASON 2, EP. 25) |
| BAT MASTERSON (SEASON 2, EP. 26) |
| BAT MASTERSON (SEASON 2, EP. 27) |
| BAT MASTERSON (SEASON 2, EP. 28) |
| BAT MASTERSON (SEASON 2, EP. 29) |
| BAT MASTERSON (SEASON 2, EP. 30) |
| BAT MASTERSON (SEASON 2, EP. 31) |
| BAT MASTERSON (SEASON 2, EP. 32) |
| BAT MASTERSON (SEASON 2, EP. 33) |
| BAT MASTERSON (SEASON 2, EP. 34) |
| BAT MASTERSON (SEASON 2, EP. 35) |
| BAT MASTERSON (SEASON 2, EP. 36) |
| BAT MASTERSON (SEASON 2, EP. 37) |
| BAT MASTERSON (SEASON 3, EP. 01) |
| BAT MASTERSON (SEASON 3, EP. 02) |
| BAT MASTERSON (SEASON 3, EP. 03) |
| BAT MASTERSON (SEASON 3, EP. 04) |
| BAT MASTERSON (SEASON 3, EP. 05) |
| BAT MASTERSON (SEASON 3, EP. 06) |
| BAT MASTERSON (SEASON 3, EP. 07) |
| BAT MASTERSON (SEASON 3, EP. 08) |
| BAT MASTERSON (SEASON 3, EP. 09) |
| BAT MASTERSON (SEASON 3, EP. 10) |
| BAT MASTERSON (SEASON 3, EP. 11) |
| BAT MASTERSON (SEASON 3, EP. 12) |
| BAT MASTERSON (SEASON 3, EP. 13) |
| BAT MASTERSON (SEASON 3, EP. 14) |
| BAT MASTERSON (SEASON 3, EP. 15) |
| BAT MASTERSON (SEASON 3, EP. 16) |
| BAT MASTERSON (SEASON 3, EP. 17) |
| BAT MASTERSON (SEASON 3, EP. 18) |

| |
|---|
| BAT MASTERSON (SEASON 3, EP. 19) |
| BAT MASTERSON (SEASON 3, EP. 20) |
| BAT MASTERSON (SEASON 3, EP. 21) |
| BAT MASTERSON (SEASON 3, EP. 22) |
| BAT MASTERSON (SEASON 3, EP. 23) |
| BAT MASTERSON (SEASON 3, EP. 24) |
| BAT MASTERSON (SEASON 3, EP. 25) |
| BAT MASTERSON (SEASON 3, EP. 26) |
| BAT MASTERSON (SEASON 3, EP. 27) |
| BAT MASTERSON (SEASON 3, EP. 28) |
| BAT MASTERSON (SEASON 3, EP. 29) |
| BAT MASTERSON (SEASON 3, EP. 30) |
| BAT MASTERSON (SEASON 3, EP. 31) |
| BAT MASTERSON (SEASON 3, EP. 32) |
| BAT MASTERSON (SEASON 3, EP. 33) |
| BAT MASTERSON (SEASON 3, EP. 34) |
| BE COOL |
| BEAST WITHIN, THE |
| BEAT STREET |
| BEAUTY SHOP |
| BENNY & JOON |
| BEST MEN |
| BEST SELLER |
| BIG COUNTRY, THE |
| BILL & TED'S BOGUS JOURNEY |
| BILL & TED'S EXCELLENT ADVENTURE |
| BILLY TWO HATS |
| BIO-DOME |
| BIRDCAGE, THE |
| BLACK CAESAR |
| BLACK MAMA, WHITE MAMA |
| BLACK STALLION RETURNS, THE |
| BLACK STALLION, THE |
| BLACULA |
| BLOOD SIMPLE |
| BLOODSPORT |
| BLOODY MAMA |
| BLOW OUT |
| BLOWN AWAY |
| BLUE STEEL |
| BLUE VELVET |
| BODY OF EVIDENCE |
| BOWLING FOR COLUMBINE |
| BRADDOCK: MIA 3 |
| BRADDOCK: MISSING IN ACTION III |
| BRASS LEGEND, THE |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| |
|---|
| BREAKER! BREAKER! |
| BREAKHEART PASS |
| BREAKIN' |
| BREAKIN' 2: ELECTRIC BOOGALOO |
| BRIDGE TOO FAR, A |
| BRIGHT LIGHTS, BIG CITY |
| BRING ME THE HEAD OF ALFREDO GARCIA |
| BROKEN STAR, THE |
| BUBBA HO-TEP |
| BUCKTOWN, U.S.A. |
| BUFFALO BILL AND THE INDIANS |
| BULL DURHAM |
| BULLETPROOF |
| BULLETPROOF MONK |
| CADILLAC MAN |
| CANADIAN BACON |
| CAPOTE |
| CARBON COPY (EPIC) |
| CARE BEARS MOVIE, THE |
| CARRIE |
| CARRIE (TV MOVIE) |
| CAST A LONG SHADOW |
| CHARLIE BARTLETT |
| CHATO'S LAND |
| CHEECH & CHONG'S THE CORSICAN BROTHERS |
| CHERRY 2000 |
| CHILD'S PLAY |
| CHILD'S PLAY (1988) |
| CHINA MOON |
| CHITTY CHITTY BANG BANG |
| CLAIM, THE |
| CLAMBAKE |
| CLASS |
| CLEAN SLATE |
| CODE 46 |
| CODE OF SILENCE |
| COFFEE AND CIGARETTES |
| COFFY |
| COLORS |
| COMANCHE |
| COMEDY'S DIRTIEST DOZEN |
| COMES A HORSEMAN |
| COMPANY BUSINESS |
| COTTON CLUB, THE |
| COTTON COMES TO HARLEM |
| COUCH TRIP, THE |

| |
|---|
| CQ |
| CRIMINAL LAW |
| CROCODILE HUNTER: COLLISION COURSE, THE |
| CRUSOE |
| CURSE (EPIC), THE |
| CURSE II: THE BITE |
| CURSE OF THE PINK PANTHER |
| CUTTING EDGE, THE |
| CYBORG |
| DALTON GIRLS, THE |
| DANCES WITH WOLVES |
| DANGEROUS GAME |
| DARK ANGEL |
| DARK BLUE |
| DARK HALF, THE |
| DAVY CROCKETT, INDIAN SCOUT |
| DAY OF THE OUTLAW |
| DEAD OF WINTER |
| DEATH RIDES A HORSE |
| DEATH VALLEY RANGERS |
| DEATH WARRANT |
| DEATH WISH 2 |
| DEATH WISH III |
| DEATH WISH IV |
| DEATH WISH V |
| DECEIVER |
| DEFIANT ONES, THE (TV MOVIE) |
| DELIRIOUS |
| DE-LOVELY |
| DELTA FORCE |
| DELTA FORCE 2 |
| DESPERATELY SEEKING SUSAN |
| DIAMONDS ARE FOREVER |
| DIARY OF A HITMAN |
| DIE ANOTHER DAY |
| DIGGSTOWN |
| DIRTY DOZEN: DEADLY MISSION |
| DIRTY ROTTEN SCOUNDRELS |
| DIRTY WORK |
| DISTURBING BEHAVIOR |
| DOC |
| DOGS OF WAR, THE |
| DOUBLE IMPACT |
| DR. NO |
| DRANGO |
| DRESSED TO KILL |

| |
|---|
| DRY WHITE SEASON, A |
| DUEL AT DIABLO |
| EASY MONEY |
| ELEPHANT TALES (DTV) |
| ERIK THE VIKING |
| ESCORT WEST |
| EVE OF DESTRUCTION |
| EVERYTHING YOU ALWAYS…SEX |
| EXTREMITIES |
| FALCON AND THE SNOWMAN, THE |
| FAME |
| FARGO |
| FATAL BEAUTY |
| FATAL INSTINCT |
| FAVOR, THE |
| FIDDLER ON THE ROOF |
| FIRES WITHIN |
| FIREWALKER |
| FIRST POWER, THE |
| FISH CALLED WANDA, A |
| FISTFUL OF DOLLARS, A |
| FISTFUL OF DYNAMITE, A |
| FIVE GUNS TO TOMBSTONE |
| FIVE GUNS WEST |
| FLASH GORDON |
| FLAWLESS |
| FLED |
| FLESH + BLOOD |
| FLUKE |
| FLYBOYS |
| FLYING SCOTSMAN, THE |
| FOR A FEW DOLLARS MORE |
| FOR YOUR EYES ONLY |
| FORCE 10 FROM NAVARONE |
| FORT BOWIE |
| FORT DEFIANCE |
| FORT MASSACRE |
| FORT YUMA |
| FORTUNE COOKIE, THE |
| FOUR WEDDINGS AND A FUNERAL |
| FOXY BROWN |
| FRANKIE AND JOHNNY |
| FRENCH LIEUTENANT'S WOMAN, THE |
| FRIDAY FOSTER |
| FROG PRINCE, THE |
| FROM NOON TILL THREE |

| |
|---|
| FROM RUSSIA WITH LOVE |
| FRONTIER UPRISING |
| FULL MOON HIGH |
| FURY AT SHOWDOWN |
| FX |
| FX II |
| GAMBLER WORE A GUN, THE |
| GANG RELATED |
| GERONIMO |
| GET SHORTY |
| GETTING EVEN WITH DAD |
| GHOST TOWN |
| GHOST WORLD |
| GHOULIES |
| GHOULIES II |
| GOD FORGIVES, I DON'T |
| GOLDENEYE |
| GOLDFINGER |
| GOOD, THE BAD AND THE UGLY, THE |
| GREAT ESCAPE, THE |
| GREAT SCOUT AND CATHOUSE THURSDAY, THE |
| GREAT TRAIN ROBBERY, THE |
| GUN BELT |
| GUN BROTHERS |
| GUN DUEL IN DURANGO |
| GUN FEVER |
| GUN THE MAN DOWN |
| GUNFIGHT |
| GUNFIGHT AT DODGE CITY, THE |
| GUNFIGHTERS OF ABILENE |
| GUNS OF THE MAGNIFICENT SEVEN |
| GUNSIGHT RIDGE |
| GUNSLINGER |
| GUY THING, A |
| HACKERS |
| HAIR |
| HALLELUJAH TRAIL, THE |
| HALLIDAY BRAND, THE |
| HANG 'EM HIGH |
| HANNAH AND HER SISTERS |
| HANNIBAL |
| HANSEL AND GRETEL (1987) |
| HARD RIDE, THE |
| HARLEY DAVIDSON AND THE MARLBORO MAN |
| HART'S WAR |
| HEARTBREAKERS |

| |
|---|
| HEAVEN'S GATE |
| HELL UP IN HARLEM |
| HERCULES |
| HERO AND THE TERROR |
| HICKEY AND BOGGS |
| HIGH NOON PART II: THE RETURN OF WILL KA |
| HIGH SPIRITS (EPIC) |
| HIGHWAY TO HELL |
| HILLS RUN RED, THE |
| HOLLYWOOD SHUFFLE |
| HOME OF THE BRAVE |
| HOODLUM |
| HOOSIERS |
| HORSE SOLDIERS, THE |
| HOT SPOT, THE |
| HOT TUB TIME MACHINE |
| HOTEL RWANDA |
| HOUR OF THE GUN |
| HOUSE ON CARROLL STREET, THE |
| HOW TO LOSE FRIENDS AND ALIENATE PEOPLE |
| HOW TO STUFF A WILD BIKINI |
| HUCKLEBERRY FINN |
| HUNTING PARTY (1971), THE |
| ILLEGALLY YOURS |
| I'M GONNA GIT YOU SUCKA |
| IMPROMPTU |
| IN THE HEAT OF THE NIGHT (FEATURE) |
| IN THE TIME OF THE BUTTERFLIES |
| INDIAN FIGHTER, THE |
| INTO THE BLUE |
| INVADERS FROM MARS |
| INVASION OF THE BODY SNATCHERS |
| INVASION U.S.A. |
| INVITATION TO A GUNFIGHTER |
| IRON SHERIFF, THE |
| JACKIE ROBINSON STORY, THE |
| JANUARY MAN, THE |
| JASON'S LYRIC |
| JEEPERS CREEPERS |
| JEEPERS CREEPERS 2 |
| JOHNNY BE GOOD |
| JOURNEY TO THE CENTER OF THE EARTH |
| KALIFORNIA |
| KENTUCKIAN, THE |
| KID COLTER |
| KILL ME AGAIN |

| |
|---|
| KILLER ELITE, THE |
| KILLER KLOWNS FROM OUTER SPACE |
| KILLING ME SOFTLY (2003) |
| KILLING ME SOFTLY (MGM) |
| KING SOLOMON'S MINES (CANNON) |
| KINJITE: FORBIDDEN SUBJECTS |
| LADY VANISHES (HITCHCOCK), THE |
| LARGER THAN LIFE |
| LARS AND THE REAL GIRL |
| LAWMAN |
| LEAVING LAS VEGAS |
| LEGALLY BLONDE |
| LEGALLY BLONDE 2: RED, WHITE AND BLONDE |
| LEVIATHAN |
| LICENSE TO KILL |
| LIFE STINKS |
| LIFEFORCE |
| LILIES OF THE FIELD |
| LIONS FOR LAMBS |
| LITTLE DORRIT (PART 1) |
| LITTLE DORRIT (PART 2) |
| LITTLE MAN TATE |
| LIVE AND LET DIE |
| LIVIN' LARGE |
| LIVING DAYLIGHTS, THE |
| LOCH NESS |
| LONE GUN, THE |
| LONE WOLF MCQUADE |
| LONG RIDERS, THE |
| LONGSHOT, THE |
| LORD OF ILLUSIONS |
| LOVE FIELD |
| MAD MAX |
| MADHOUSE (1990) |
| MAGNIFICENT SEVEN (1960), THE |
| MAGNIFICENT SEVEN RIDE!, THE |
| MAGNIFICENT SEVEN, THE |
| MALONE |
| MAN FROM DEL RIO |
| MAN IN THE IRON MASK, THE |
| MAN OF THE EAST |
| MAN OF THE WEST |
| MAN WITH THE GOLDEN GUN, THE |
| MANCHURIAN CANDIDATE, THE |
| MANHATTAN |
| MARRIED TO THE MOB |

| |
|---|
| MARRIED TO THE MOB (FEATURE) |
| MASTERS OF THE UNIVERSE |
| MECHANIC, THE |
| MEDGAR EVERS STORY, THE |
| MEMORIES OF ME |
| MEN AT WORK |
| MERMAIDS |
| MESSENGER OF DEATH |
| METEOR MAN, THE |
| MIAMI BLUES |
| MIDNIGHT COWBOY |
| MIDNIGHT HEAT |
| MIGHTY QUINN, THE |
| MISSING IN ACTION |
| MISSING IN ACTION 2 THE BEGINNING |
| MISSISSIPPI BURNING |
| MISSOURI BREAKS, THE |
| MOD SQUAD, THE |
| MONKEY SHINES: AN EXPERIMENT IN FEAR |
| MONSTER DOG |
| MOONRAKER |
| MOONSTRUCK |
| MORE DEAD THAN ALIVE |
| MOTEL HELL |
| MR. BROOKS |
| MR. MAJESTYK |
| MR. MOM |
| MULHOLLAND FALLS |
| MURPHY'S LAW |
| MYSTIC PIZZA |
| NATIONAL LAMPOON'S MOVIE MADNESS |
| NAVAJO JOE |
| NAVY SEALS |
| NED KELLY |
| NEVER SAY NEVER AGAIN |
| NICHOLAS NICKLEBY |
| NIGHT OF THE COMET |
| NIGHT OF THE DEMONS |
| NO MAN'S LAND |
| NO SUCH THING |
| NO WAY OUT |
| NOOSE FOR A GUNMAN |
| OCTOPUSSY |
| OF MICE AND MEN |
| OKLAHOMA TERRITORY |
| ON HER MAJESTY'S SECRET SERVICE |

| |
|---|
| ONCE BITTEN |
| ONCE UPON A CRIME |
| ORGANIZATION, THE |
| ORIGINAL GANGSTAS |
| ORIGINAL SIN |
| OUT OF TIME |
| OUTLAW'S SON |
| OVERBOARD (1987) |
| OVERLAND PACIFIC |
| PACKAGE, THE |
| PAJAMA PARTY |
| PEBBLE AND THE PENGUIN, THE |
| PENITENTIARY |
| PENITENTIARY 2 |
| PENITENTIARY 3 |
| PEOPLE THAT TIME FORGOT, THE |
| PEREZ FAMILY, THE |
| PINK AT FIRST SIGHT |
| PINK PANTHER (1964), THE |
| PINK PANTHER (2006), THE |
| PINK PANTHER 2, THE |
| PINK PANTHER STRIKES AGAIN, THE |
| PINK PANTHER, THE |
| PIONEER WOMAN |
| PLATOON |
| POLTERGEIST II: THE OTHER SIDE |
| POLTERGEIST III |
| POPE OF GREENWICH VILLAGE |
| POSSE |
| PRANCER |
| PUMPKINHEAD |
| PUMPKINHEAD II: BLOOD WINGS |
| PURPLE ROSE OF CAIRO, THE |
| QUIGLEY DOWN UNDER |
| QUINCANNON, FRONTIER SCOUT |
| RADIO DAYS |
| RAGE - CARRIE 2, THE |
| RAGE IN HARLEM, A |
| RAGING BULL |
| RAIN MAN |
| RANCHO DELUXE |
| REAL MEN |
| REASON TO LIVE, A REASON TO DIE, A |
| REBEL IN TOWN |
| RED CORNER |
| RED DAWN |

| |
|---|
| RED DAWN (1984) |
| RED RIDING HOOD |
| RED RIVER (1948) |
| RED RIVER (FEATURE) |
| RED RIVER (TV MOVIE) |
| REMO WILLIAMS: THE ADVENTURE BEGINS... |
| RESCUE DAWN |
| RETURN OF A MAN CALLED HORSE |
| RETURN OF SABATA |
| RETURN OF SABATA, THE |
| RETURN OF THE PINK PANTHER |
| RETURN OF THE SEVEN |
| RETURN TO ME |
| REVENGE OF THE PINK PANTHER |
| REVOLT AT FORT LARAMIE |
| RIDE BACK, THE |
| RIDE OUT FOR REVENGE |
| RIVER OF DEATH |
| ROAD HOUSE |
| ROB ROY |
| ROBBERS' ROOST |
| ROBBERY UNDER ARMS |
| ROBOCOP |
| ROBOCOP (1987) |
| ROBOCOP 2 |
| ROBOCOP 3 |
| ROCKY |
| ROCKY BALBOA |
| ROCKY II |
| ROCKY III |
| ROCKY IV |
| ROCKY V |
| ROLLERBALL (1975) |
| ROLLERBALL (2002) |
| ROLLING THUNDER |
| ROMANTIC COMEDY |
| RONIN |
| RUNAWAY TRAIN |
| RUNNING SCARED |
| RUNNING TARGET |
| RUSSIA HOUSE, THE |
| SABATA |
| SABOTAGE |
| SAHARA |
| SALT AND PEPPER |
| SAM WHISKEY |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| |
|---|
| SCORPIO |
| SCREAM, BLACULA, SCREAM! |
| SECRET OF N.I.M.H. 2:TIMMY TO THE RESCUE |
| SECRET OF N.I.M.H., THE |
| SECRET OF NIMH, THE |
| SHATTERED |
| SHEBA, BABY |
| SHE-DEVIL |
| SHE'S GOTTA HAVE IT |
| SHOT IN THE DARK, A |
| SHOWGIRLS |
| SIEGE OF FIREBASE GLORIA, THE |
| SIX DEGREES OF SEPARATION |
| SKI PATROL |
| SLAUGHTER |
| SLEEPER |
| SLEEPOVER |
| SODA CRACKER |
| SOLARBABIES |
| SOME GIRLS |
| SOMETHING WILD (1986) |
| SOMETHING WILD (ORION) |
| SOMETIMES THEY COME BACK |
| SON OF THE PINK PANTHER |
| SONORA STAGECOACH |
| SOUL PLANE |
| SOUTHWEST PASSAGE |
| SPACEBALLS |
| SPECIES |
| SPECIES II |
| SPECIES III |
| SPECIES: THE AWAKENING (DTV) |
| SPELLBINDER |
| SPIKES GANG, THE |
| SPILL |
| SPY WHO LOVED ME, THE |
| STAGECOACH |
| STARGATE |
| STARGATE: CONTINUUM |
| STARGATE: CONTINUUM (DTV) |
| STARGATE: THE ARK OF TRUTH (DTV) |
| STIGMATA |
| STRANGE INVADERS |
| STREET SMART |
| SUPERNOVA |
| SUPPORT YOUR LOCAL GUNFIGHTER |

| |
|---|
| SUPPORT YOUR LOCAL SHERIFF! |
| SWORD OF THE VALIANT |
| TALES OF TERROR |
| TANK GIRL |
| TEA WITH MUSSOLINI |
| TEEN WOLF (1985) |
| TEEN WOLF (FEATURE) |
| TEEN WOLF TOO |
| TERMINATOR, THE |
| TERROR IN A TEXAS TOWN |
| TEXAS CHAINSAW MASSACRE 2 |
| THELMA & LOUISE |
| THEY CALL ME MISTER TIBBS! |
| THIEF |
| THIRTY-NINE STEPS (HITCHCOCK), THE |
| THOMAS CROWN AFFAIR (1968), THE |
| THOMAS CROWN AFFAIR (1999), THE |
| THROW MOMMA FROM THE TRAIN |
| THUNDERBALL |
| THUNDERBOLT AND LIGHTFOOT |
| TIGER'S TAIL, THE |
| TO LIVE AND DIE IN L.A. |
| TOM SAWYER |
| TOMAHAWK TRAIL |
| TOMORROW NEVER DIES |
| TOP GUN |
| TOUCH |
| TOUGHEST GUN IN TOMBSTONE |
| TRAIL OF THE PINK PANTHER |
| TROOPER HOOK |
| TRUE HEART |
| TWO WEEKS |
| UHF |
| UNDERCOVER BLUES |
| UNFORGIVEN, THE |
| UNTAMED HEART |
| UPTOWN GIRLS |
| USUAL SUSPECTS, THE |
| VALDEZ IS COMING |
| VALERIE |
| VALKYRIE |
| VALLEY GIRL |
| VAMPIRE'S KISS |
| VIEW TO A KILL, A |
| WALKING TALL (2004) |
| WANDA NEVADA |

| |
|---|
| WAR DRUMS |
| WAR PAINT |
| WARGAMES |
| WARGAMES (1983) |
| WAY WEST, THE |
| WEDDING DAZE |
| WE'LL NEVER HAVE PARIS |
| WEST SIDE STORY |
| WHAT'S THE WORST THAT COULD HAPPEN? |
| WHITE BUFFALO, THE |
| WICKER PARK |
| WILD AT HEART |
| WILD BILL |
| WINDTALKERS |
| WITCHBOARD |
| WOMAN IN RED, THE |
| WOMEN OF SAN QUENTIN |
| WONDERFUL COUNTRY, THE |
| WOODS, THE |
| WORLD IS NOT ENOUGH, THE |
| YELLOW TOMAHAWK, THE |
| YELLOWBEARD |
| YOU ONLY LIVE TWICE |
| YOUNG BILLY YOUNG |
| YOUNG RIDERS, THE (68x60') |
| YOUNGBLOOD (1986) |

Exhibit 5

1
2
3
4
5
6

7              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
8

9  STARZ ENTERTAINMENT, LLC,              Proceedings in United States District Court
                                          for the Central District of California
10                      Plaintiff,
                                          Civil Action No.: 2:20-CV-04085 DMG
11  v.                                    (KSx)

12  MGM DOMESTIC TELEVISION               **AMAZON'S OBJECTIONS TO**
   DISTRIBUTION LLC,                      **SUBPOENA**
13
                        Defendant.        **DWT REF NO.: SUB1009744-C**
14

15
              Pursuant to the Federal Rules of Civil Procedure, Amazon.com, Inc. ("Amazon")
16
   objects to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection
17
   of Premises in a Civil Action ("subpoena") from Plaintiff Starz Entertainment, LLC
18
   ("Plaintiff") in the above-referenced matter.  Please contact the undersigned to the extent that a
19
   meet and confer is necessary regarding any of these objections.
20
                          **I.      GENERAL OBJECTIONS**
21
          1.      **Failure to Reduce Burden on Nonparty.**  Amazon objects to the subpoena for
22
   failing to take reasonable efforts to reduce the burden and expense on nonparty Amazon.  In
23
   particular, Amazon objects to this subpoena to the extent certain information sought is in the
24
   possession, custody, or control of the parties to the litigation—Defendant MGM Domestic
25
   Television Distribution LLC ("Defendant").  *See* Fed. R. Civ. P. 45(d)(1); *see e.g., Rembrandt*
26
   *Patent Innovations v. Apple, Inc.*, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015) (holding
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

subpoena issued to non-party is unduly burdensome "until and unless Plaintiffs can establish they are unable to obtain the requested information from the Defendant"); *In re Allergan,* 2016 WL 5922717, at *9 (C.D. Cal. Sept. 23, 2016) ("'Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party'" (citation omitted)); *Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 638 (C.D. Cal. 2005) ("[T]hese requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the] nonparty") (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980)); *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming denial of motion to compel production from nonparty, holding "the district court could properly require [defendant] to seek discovery from its party opponent before burdening the nonparty [] with [an] ancillary proceeding"). Obtaining records from a party also allows the parties to the litigation to directly address any confidentiality and privacy issues.

2.   **Failure to Provide Notice.**  Amazon objects to the subpoena as failing to show that prior notice has been provided to other parties to the litigation, as required by Fed. R. Civ. P. 45(a)(4). Failure to comply with this requirement renders the subpoena void.

3.   **Privacy.**  Amazon objects to this subpoena on the grounds of privacy because it seeks sensitive consumer, financial, and other information, without making any showing that appropriate notice and authorization have been obtained to seek such information, or that there is a need for such information that would override state or federal privacy rights.

4.   **Overbroad and Unduly Burdensome.**  Amazon objects to the subpoena as overbroad and unduly burdensome. *See* Fed. R. Civ. P. 26(b)(1). In particular, the subpoena contains *15* document requests, seeking, among other things, "*[a]ll* agreements pursuant to which You were granted a license or other authorization to exhibit or otherwise exploit any of the Pictures on any Amazon Services," and "*[a]ll* internal Communications or other

AMAZON'S OBJECTIONS TO SUBPOENA - 2
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Documents concerning Starz and/or the Pictures," without making any showing that such broad demands cannot be reasonably narrowed.

5. **Vague and Ambiguous.**  Amazon objects to the use of vague and ambiguous terms, phrases, and definitions in the subpoena, including, but not limited to, "other authorization," "exhibit," "otherwise exploit," "Amazon Services," "affiliated sites," and "exhibition or display," without providing clarifying definitions or sufficient information to identify exactly what is sought.  Further, Amazon objects to the definition of "Amazon," "You," and "Your" as vague and ambiguous, including because it fails to identify "Affiliates . . . subsidiaries, predecessors or assigns" to which it is referring.

6. **Failure to Limit Time Period.**  Amazon objects to the failure to reasonably limit the time period covered by the requests—seeking information for a period of nearly nine years, "from January 1, 2013, to the date of the responses"—as unduly burdensome and overbroad, and seeking documents not kept and maintained in the ordinary course of business.

7. **Improper Request for Confidential, Proprietary, or Trade Secret Information.**  Amazon objects to the subpoena to the extent it seeks documents containing confidential, proprietary, or trade secret information.  Amazon will not produce such sensitive information absent entry of an appropriate protective order, and expressly reserves all rights with respect to any protective order entered in the case pertaining to the production of information or documents containing any confidential, proprietary, or trade secret information.

8. **Electronically Stored Information.**  Amazon objects to the subpoena to the extent it seeks production of electronically stored information from sources not reasonably accessible (*e.g.*, legacy systems, backup media, temporary or ambient data, or data that would require engineering resources to extract), in light of the burdens or costs required to locate, restore, review, and produce whatever responsive information may be found.

9. **Privileged Information.**  Amazon objects to the subpoena to the extent it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Amazon also objects to the subpoena's definition of

AMAZON'S OBJECTIONS TO SUBPOENA - 3
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

"Amazon," "You," and "Your" because it includes "advisors, representatives, agents, attorneys . . . and all Persons acting or purporting to act on behalf of any of the foregoing."  Thus, the requests seek information that is protected from disclosure by the attorney-client privilege and work product doctrine.

10.   **Not within Amazon's Possession, Custody, or Control**.  Amazon objects to the subpoena to the extent it purports to require Amazon to search for and produce documents not within its possession, custody, or control.

11.   **Violation of the First Amendment.**  Amazon objects to the subpoena to the extent that it seeks expressive content protected by the First Amendment to the United States Constitution.  *See Amazon.com LLC v. L*ay, 758 F. Supp. 1154, 1167 (W.D. Wash. 2010) ("The First Amendment protects a buyer from having the expressive content of her purchase of books, music, and audiovisual materials disclosed to the government.  Citizens are entitled to receive information and ideas through books, films, and other expressive materials anonymously"); U.S.C.A. Const. Amend. 1; *see also Doe v. 2TheMart.com Inc.*, 140 F. Supp.2d 1088, 1091-1092 (2001) (a subpoena issued by a court, "even when issued at the request of a private party in a civil lawsuit, constitutes state action and is subject to constitutional limitations").

12.   **Contrary to the Video Protection Act.**  Amazon objects to the subpoena to the extent it seeks video, movie, or other media titles that are protected from disclosure by the Video Privacy Protection Act, 18 U.S.C.A. § 2710 *et. seq.* ("VPPA").  The VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched."  *In re Hulu Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014).  "Under the VPPA, Amazon qualifies as a 'video tape service provider.'" *Amazon.com LLC v. Lay*, 758 F. Supp.2d 1154, 1170 (W.D. Wash. 2010) (citing 18 U.S.C. § 2710(a)(4)).  As a video tape service provider, "Amazon may not disclose records regarding its customer's video or audiovisual purchases, except in limited circumstances."  *Id*.; 18 U.S.C.A. § 2710(b).

AMAZON'S OBJECTIONS TO SUBPOENA - 4
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

13.     **Imposition of Burdens Not Recognized by the Federal Rules.**  Amazon objects to the subpoena as imposing burdens beyond those recognized by federal law, including the Federal Rules of Civil Procedure, to the extent responding to the subpoena would require Amazon to engage in a forensic data collection effort and compile such data in a manner other than it is maintained in the ordinary course of business.  *See, e.g.*, Requests Nos. 3-5.

## II.     SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS

In addition to its general objections above, incorporated into each of the responses below, Amazon makes the following specific objections to Plaintiff's document requests.

**REQUEST 1**

All agreements pursuant to which You were granted a license or other authorization to exhibit or otherwise exploit any of the Pictures on any Amazon Services.

**RESPONSE TO REQUEST 1**

Amazon objects to the request as overbroad and unduly burdensome because it has already produced responsive documents.

**REQUEST 2**

Documents sufficient to show the date(s) on which each Picture was exhibited, available for watching or streaming, or otherwise exploited on any Amazon Services.

**RESPONSE TO REQUEST 2**

Amazon objects to the request as overbroad and unduly burdensome because the information sought should be obtained directly from Defendant and for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "exhibited" and "otherwise exploited," without providing clarifying definitions or additional information to explain what exactly is sought.

AMAZON'S OBJECTIONS TO SUBPOENA - 5
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

**REQUEST 3**

Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (*e.g.*, user zip code or other geographic designation): (a) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures; (b) the number of Amazon users who viewed each Picture, in whole or in part, through the Amazon Services; (c) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the Amazon Services; (d) the number of Amazon users who viewed each Picture on demand, in whole or in part, through the Starz channel on Amazon Prime Video; (e) the duration of time Amazon users who selected the Pictures on demand spent watching, streaming or otherwise consuming each of the Pictures through the Starz channel on Amazon Prime Video; (f) the number of Amazon users who viewed each Picture, in whole or in part, through the linear Starz channel on Amazon Prime Video; (g) the duration of time Amazon users spent watching, streaming or otherwise consuming each of the Pictures through the linear Starz channel on Amazon Prime Video.

**RESPONSE TO REQUEST 3**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "affiliated sites" and "viewed," without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 4**

Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (*e.g.*, user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned

search results that included one or more of the Pictures who then subscribed to Starz through Amazon.com or any affiliated sites.

**RESPONSE TO REQUEST 4**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "affiliated sites" and "search results" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 5**

Documents sufficient to show by title, month, and the lowest level of geographic aggregation available (*e.g.*, user zip code or other geographic designation) the number of Amazon users who conducted a search on Amazon.com or any affiliated sites that returned search results that included one or more of the Pictures who then subscribed to Amazon Prime.

**RESPONSE TO REQUEST 5**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "affiliated sites" and "search results" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 6**

Documents sufficient to show any amounts, including without limitation licensing charges, royalties or other fees, that You have paid or are due to pay MGM with respect to each Picture that You have exhibited or otherwise exploited on the Amazon Services, including the dates that you paid or expect to pay the above referenced amounts.

AMAZON'S OBJECTIONS TO SUBPOENA - 7
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

**RESPONSE TO REQUEST 6**

Amazon objects to the request as overbroad and unduly burdensome because the information sought should be obtained directly from Defendant and for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "other fees" and "otherwise exploited," without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 7**

Documents sufficient to show any projections or estimates of amounts that You expect to pay to MGM with respect to each Picture that You have or will exhibit or otherwise exploit on the Amazon Services, including the dates that you expect to make the above referenced payments.

**RESPONSE TO REQUEST 7**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "projections" and "otherwise exploit" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 8**

Documents sufficient to show the number of Your users who subscribed to or purchased access to the Starz channel—i.e. whose subscription to Starz was initiated through Amazon.com or any affiliated site at any time.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

**RESPONSE TO REQUEST 8**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information. *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "affiliated sites" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 9**

Documents sufficient to show the number of new subscribers to Starz whose subscription to Starz was initiated through Amazon.com or any affiliated site during the relevant period.

**RESPONSE TO REQUEST 9**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information. *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "affiliated site" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 10**

All Documents and Communications between You and MGM concerning Starz and/or the Pictures.

**RESPONSE TO REQUEST 10**

Amazon objects to the request as overbroad and unduly burdensome because the information sought should be obtained directly from Defendant and for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information. *See* Fed. R. Civ. P. 26(b)(1).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

**REQUEST 11**

All Documents and Communications between You and Epix concerning Starz and/or the Pictures.

**RESPONSE TO REQUEST 11**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

**REQUEST 12**

All internal Communications or other Documents concerning Starz and/or the Pictures.

**RESPONSE TO REQUEST 12**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

**REQUEST 13**

All complaints, written or oral, You received concerning Your exhibition or display of Pictures.

**RESPONSE TO REQUEST 13**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "complaints, written or oral," and "exhibition or display," without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 14**

All Documents You received, including cease-and-desist letters, claims for damages, and similar Communications concerning Your exhibition or display of Pictures.

**RESPONSE TO REQUEST 14**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

Amazon further objects to the use of vague and ambiguous terms and phrases in the request, including, but not limited to, "claims for damages" without providing clarifying definitions or additional information to explain what exactly is sought.

**REQUEST 15**

All Documents and Communications concerning this action, *Starz Entertainment, LLC v. MGM Television Distribution, LLC*, Civil Action No. 2:20-CV-4085 DMG (KSx).

**RESPONSE TO REQUEST 15**

Amazon objects to the request as overbroad and unduly burdensome for Plaintiff's failure to make any showing that such a broad demand is necessary or cannot be narrowed to seek only relevant and reasonably ascertainable information.  *See* Fed. R. Civ. P. 26(b)(1).

DATED this 22nd day of April, 2022.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Amazon.com, Inc.


By: */s/ Deana D. Ahn*
    Deana D. Ahn, WSBA #51528
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104
    Telephone: 206-757-8056
    Email: deanaahn@dwt.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2022, I caused the foregoing document to be served by electronic mail upon the following:

Steven Goldberg
Rick Smith
Markun Zusman Freniere Compton LLP
sgoldberg@mzclaw.com
rsmith@mzclaw.com

DATED this 22nd day of April, 2022.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Amazon.com, Inc.

By: /s/ Deana D. Ahn
Deana D. Ahn, WSBA #51528
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
Telephone: 206-757-8056
Email: deanaahn@dwt.com

AMAZON'S OBJECTIONS TO SUBPOENA - 12
4877-9338-4989v.1 0051461-001872

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Exhibit 6

## Rick Smith

| | |
|---|---|
| **From:** | Ahn, Deana <DeanaAhn@dwt.com> |
| **Sent:** | Friday, April 22, 2022 11:40 AM |
| **To:** | Steven Goldberg |
| **Cc:** | Rick Smith; Howard, Jim; Nan, Mindy; Crawford, Donna |
| **Subject:** | RE: SUB1009744 Starz Entertainment, LLC v. MGM - Production 3.31.22 - CONFIDENTIAL |
| **Attachments:** | SUB1009744-C 2021 DS - Starz Entertainment, LLC v. MGM - Objections.pdf |

Steve:

Amazon's position with respect to communications between Amazon and MGM entities regarding this litigation remains unchanged. It is not proper for Starz to seek duplicative information from non-party Amazon. We note MGM Holdings Inc.'s ("Holdings") opposition to Starz's motion to compel—according to Holdings's opposing papers, the parties already engaged in extensive negotiations and agreed to search terms and discovery parameters, which include all of what Starz is also demanding from Amazon. Starz is not entitled to such duplicative and cumulative discovery, particularly from a non-party.

Amazon, however, would like to avoid motions practice and has been considering Starz's requests for additional data (Pictures, money paid, time periods, geographic areas). Given Prime Video data retention policies, it's unclear how much pre-2019 data Amazon has but Amazon is willing to collect available responsive data and should be able do so within the next week. We believe that this is a reasonable compromise. Is Starz willing to forgo moving to compel Amazon in exchange?

While we continue to work on resolution of above issues and collection of additional data, attached is Amazon's written response to Starz's most recent subpoena. Please let us know how you'd like to proceed. Thanks.

-Deana

**Deana Ahn** | Davis Wright Tremaine LLP
Attorney
Pronouns: She/Her
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8056 | Fax: (206) 757-7056
Email: deanaahn@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

**From:** Steven Goldberg <sgoldberg@mzclaw.com>
**Sent:** Wednesday, April 13, 2022 10:44 AM
**To:** Ahn, Deana <DeanaAhn@dwt.com>
**Cc:** Rick Smith <rsmith@mzclaw.com>; Howard, Jim <JimHoward@dwt.com>; Nan, Mindy <MindyNan@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>
**Subject:** Re: SUB1009744 Starz Entertainment, LLC v. MGM - Production 3.31.22 - CONFIDENTIAL

**[EXTERNAL]**

And Rick Smith will also join.

Sent from my iPhone

On Apr 13, 2022, at 10:41 AM, Steven Goldberg <sgoldberg@mzclaw.com> wrote:

 Please send again.  I can definitely join.

Sent from my iPhone

On Apr 13, 2022, at 10:34 AM, Ahn, Deana <DeanaAhn@dwt.com> wrote:

Steve:

Does tomorrow at 9:30am still work for you? My invite came back declined.

**Deana Ahn** | Davis Wright Tremaine LLP
Attorney
Pronouns: She/Her
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8056 | Fax: (206) 757-7056
Email: deanaahn@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

**From:** Steven Goldberg <sgoldberg@mzclaw.com>
**Sent:** Wednesday, April 13, 2022 10:03 AM
**To:** Ahn, Deana <DeanaAhn@dwt.com>
**Cc:** Rick Smith <rsmith@mzclaw.com>; Howard, Jim <JimHoward@dwt.com>; Nan, Mindy <MindyNan@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>
**Subject:** Re: SUB1009744 Starz Entertainment, LLC v. MGM - Production 3.31.22 - CONFIDENTIAL

**[EXTERNAL]**

Tomorrow at 9:30 AM works for me.

Sent from my iPhone

On Apr 13, 2022, at 10:01 AM, Ahn, Deana <DeanaAhn@dwt.com> wrote:

Steve:

I received your vmail message. It would be easier to discuss on a call. Jim and I are tied up today but we could do tomorrow at 9:30am or 2:30pm. Please let us know and we'll circulate a Zoom invite, thanks.

-Deana

**Deana Ahn** | Davis Wright Tremaine LLP
Attorney
Pronouns: She/Her
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8056 | Fax: (206) 757-7056

2

Email: deanaahn@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Ahn, Deana
**Sent:** Monday, April 11, 2022 8:14 PM
**To:** 'Steven Goldberg' <sgoldberg@mzclaw.com>
**Cc:** Rick Smith <rsmith@mzclaw.com>; Howard, Jim
<JimHoward@dwt.com>; Nan, Mindy <MindyNan@dwt.com>;
Crawford, Donna <DonnaCrawford@dwt.com>
**Subject:** RE: SUB1009744 Starz Entertainment, LLC v. MGM - Production
3.31.22 - CONFIDENTIAL

Steve:

We've been able to look into this further and to confer with Amazon
regarding Starz's requests for Amazon's communications with MGM
entities regarding this litigation. Amazon's position remains that Starz's
requests should be directed to MGM and not to non-party Amazon.
MGM is a party to your case, it has its own legal department, its own
document systems, and it has undoubtedly engaged in extensive
document collection and production efforts. All of what you are
requesting from Amazon could be obtained from MGM. It is not proper
for Starz to seek duplicative information from non-party Amazon. To the
extent MGM resists production of responsive communications, Starz
should move to compel MGM.

The same seems true of which Pictures Starz licensed to Amazon, etc. It
seems like you should be able to get what you need from MGM, but
happy to discuss further if we are missing something.

Please let us know if you have questions or would like to set up a call.

-Deana

**Deana Ahn** | Davis Wright Tremaine LLP
Attorney
Pronouns: She/Her
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8056 | Fax: (206) 757-7056
Email: deanaahn@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Steven Goldberg <sgoldberg@mzclaw.com>
**Sent:** Thursday, April 07, 2022 4:16 PM
**To:** Ahn, Deana <DeanaAhn@dwt.com>
**Cc:** Rick Smith <rsmith@mzclaw.com>; Howard, Jim
<JimHoward@dwt.com>; Nan, Mindy <MindyNan@dwt.com>;
Crawford, Donna <DonnaCrawford@dwt.com>
**Subject:** Re: SUB1009744 Starz Entertainment, LLC v. MGM - Production
3.31.22 - CONFIDENTIAL

[EXTERNAL]

Deana,

   Please let me know when I can expect an answer as to whether Amazon will produce documents containing the information requested below amd whether Amazon will produce communications with MGM entities regarding this litigation. The meet and confer process has gone on for several months. Starz is hoping to avoid a motion to compel but will have no choice unless this information is produced.  Thank you.

   Steve

Sent from my iPhone

> On Apr 5, 2022, at 8:13 AM, Steven Goldberg <sgoldberg@mzclaw.com> wrote:
>
> Deana,
>
>    Thank you for the documents that Amazon produced, but there is relevant information missing which should be relatively simple for Amazon to priced.  Specifically, Starz needs to know which of the Pictures at issue in its case against MGM were licensed to Amazon,  what were the time periods those Pictures were exhibited by Amazon and in which geographic areas, and how much money was paid to Amazon for those Pictures.  Is such information available in a spread sheet or series of spread sheets?  Thank you.
>
>    Steve
>
> Sent from my iPhone
>
>> On Mar 31, 2022, at 3:39 PM, Ahn, Deana <DeanaAhn@dwt.com> wrote:
>>
>> Steven and Rick:
>>
>> The production contains versions of the Prime Video Direct Digital License Agreement ("PVD DLA"). As I believe you're already aware, the PVD DLA is a "click-through" agreement. This is why the format looks the way they do. We redacted sections showing Amazon's internal contract management system tools.
>>
>> As for plaintiff's request for communications between Amazon and MGM entities regarding this litigation, we're still conferring with Amazon and

will get back to you when we receive Amazon's position.

-Deana

**Deana Ahn** | Davis Wright Tremaine LLP
Attorney
Pronouns: She/Her

920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8056 | Fax: (206) 757-7056
Email: deanaahn@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

**From:** Chau, Chris <ChrisChau@dwt.com>
**Sent:** Thursday, March 31, 2022 3:29 PM
**To:** sgoldberg@mzclaw.com; rsmith@mzclaw.com
**Cc:** Ahn, Deana <DeanaAhn@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Nan, Mindy <MindyNan@dwt.com>; Crawford, Donna <DonnaCrawford@dwt.com>
**Subject:** SUB1009744 Starz Entertainment, LLC v. MGM - Production 3.31.22 - CONFIDENTIAL

Good Afternoon,

Attached is Amazon's response to your subpoena. A subsequent e-mail will contain the password to unlock the PDF, please let me know if you have any questions or concerns.

Thank you.

**Chris Chau** | Davis Wright Tremaine LLP
Paralegal

920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8531 | Fax: (206) 757-7700
Email: chauc@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

Exhibit 7

JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
MINAE YU, SBN 268814
  myu@gibsondunn.com
JONATHAN N. SOLEIMANI, SBN 295673
  jsoleimani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

ORIN SNYDER (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Defendant MGM DOMESTIC
TELEVISION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC, | CASE NO. 2:20-cv-04085-DMG-KS |
| Plaintiff, | **DEFENDANT MGM DOMESTIC TELEVISION DISTRIBUTION LLC'S SUPPLEMENTAL NOTICE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT** |
| v. | |
| MGM DOMESTIC TELEVISION DISTRIBUTION LLC, | |
| Defendant. | |

1    Pursuant to Federal Rule of Civil Procedure 7.1 and Central District of California

2  Local Rule 7.1-1, the undersigned, counsel of record for Defendant MGM Domestic

3  Television LLC, submits this Supplemental Notice of Interested Parties and Corporate

4  Disclosure Statement certifying that the following listed parties may have a pecuniary

5  interest in the outcome of this case.  These representations are made to enable the Court

6  to evaluate possible disqualification or recusal.

7

| Party | Connection / Interest |
|---|---|
| MGM Domestic Television Distribution LLC | Defendant |
| MGM Holdings Inc. | Parent Company of Defendant |
| Starz Entertainment, LLC ("STARZ") | Plaintiff |
| Lions Gate Entertainment Corporation | Parent Company of Plaintiff |

14    Defendant MGM Domestic Television Distribution LLC is an indirect, wholly

15  owned subsidiary of MGM Holdings Inc., which is now a wholly owned direct

16  subsidiary of Amazon.com, Inc. ("Amazon").  Amazon is a publicly traded corporation.

17  No publicly traded company is known to own 10% or more of Amazon.

18

19  Dated: April 15, 2022              Respectfull submitted,

20                                      GIBSON, DUNN & CRUTCHER LLP

21

22                                      By:  _____/s/ Jay P. Srinivasan_____
                                               Jay P. Srinivasan
23

24                                      Attorneys for Defendant
                                         MGM DOMESTIC TELEVISION
25                                      DISTRIBUTION LLC

26

27

28